# THE BEACONSFIELD.[1]

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 943. Submitted April 22, 1895. — Decided May 20, 1895.

The carrier is so far the representative of the owner, that he may sue in his own name, either at common law or in admiralty, for a trespass upon or injury to the property carried.

If a cargo be damaged by collision between two vessels, the owner may pursue both vessels, or either, or the owners of both, or either; and in case he proceeds against one only, and both are held in fault, he may recover his entire damages of the one sued.

A person who has suffered injury by the joint action of two or more wrong-doers, may have his remedy against all or either, subject to the condition that satisfaction once obtained is a bar to further proceedings.

If the owner of a vessel, libellant on his own behalf and on behalf of the owner of the cargo, takes no appeal from a decree dismissing the libel as to his own vessel, the owner of the cargo may be substituted as libellant in his place, and the failure of the owner of the vessel to appeal is a technical defence which ought not to prejudice the owner of the cargo.

---

[1] The docket title of this case is *Elizabeth Cleugh, Claimant of the Steamship Beaconsfield, and William Libbey, Surety,* v. *Albert W. Sanbern.*

Stipulations in admiralty are not subject to the rigid rules of the common law with respect to the liability of the surety; and so long as the cause of action remains practically the same, a mere change in the name of the libellant, as by substituting the real party in interest for a nominal party, will not avoid the stipulation as against the sureties.

THIS case, which is an outgrowth of that of *The Britannia*, 153 U. S. 130, arose upon a certificate of the Circuit Court of Appeals touching the liability of the Beaconsfield to respond for a moiety of the loss upon her cargo, by reason of her collision with the Britannia. The questions certified are based upon the finding of facts printed in the margin.[1]

---

[1] STATEMENT OF FACTS.

1. On December 21, 1886, John Lucas Cotton, master, and George Cleugh, owner of the Beaconsfield, as bailees of her cargo, filed an amended libel against the Britannia in the District Court for the Southern District of New York, to recover the sum of $45,000, damage to such cargo by reason of her collision with the Britannia, for which the latter was charged to have been solely in fault.

2. On January 7, 1887, the Compagnie Française de Navigation à Vapeur, owner of the Britannia, answered this libel, claiming the collision to have been caused solely by the fault of the Beaconsfield.

3. On the same day it also filed a petition against the Beaconsfield, reciting the former proceedings, averring the collision to have been caused wholly or partly by the fault of the Beaconsfield, that she ought to be proceeded against in the same suit for the damage to her cargo, and prayed for process against her to the end that she might be condemned for such damage.

4. The Beaconsfield was arrested under process issued upon this petition, and was released from custody upon her claimant, Cleugh, filing a stipulation for value in the sum of $23,000, with William Libbey and George C. Magoun as sureties.

5. Subsequently George Cleugh, owner of the Beaconsfield, answered this petition, denying the liability of the Beaconsfield, and excepting to the jurisdiction of the court to enforce any liability against her, by reason of the proceedings taken under this petition. John Lucas Cotton and George Cleugh, as libellants, also answered this petition, denying liability on the part of the Beaconsfield.

6. The case came on to be tried in the District Court upon these pleadings, and also upon cross libels by the owners of the Britannia and Beaconsfield, against each vessel respectively, for damages sustained by the vessels themselves. The District Court found both vessels to have been in fault, and divided the damages. The case is reported in 34 Fed. Rep. 546

Opinion of the Court.

Upon this state of facts, the Court of Appeals certified to this court, for its decision, the following questions:

7. A final decree was entered in the District Court July 9, 1889, in favor of Cotton and Cleugh, libellants, against the steamship Britannia and the steamship Beaconsfield in the sum of $50,249.26, and condemning each vessel in a moiety of said sum, amounting to $25,124.63.

8. Cross appeals from this decree were taken to the Circuit Court by George Cleugh, claimant of the Beaconsfield, and the Compagnie Française, claimant of the Britannia.

9. Pending these appeals, and on October 3, 1890, Elizabeth Cleugh was substituted as claimant of the Beaconsfield, in place of George Cleugh, deceased, and the libel of John Lucas Cotton and George Cleugh against the Britannia was continued in the name of Cotton alone.

10. Upon hearing in the Circuit Court upon the cross-appeals, the decree of the District Court was reversed, and the Britannia found to have been solely in fault for the collision. 42 Fed. Rep. 67 ; 43 Id. 96. A decree was thereupon entered in favor of Cotton, as bailee of the cargo of wheat laden on the Beaconsfield, against the Britannia in the sum of $53,907.11.

11. From this decree the Compagnie Française appealed to the Supreme Court October 8, 1890. John Lucas Cotton, libellant, did not appeal from the decree of the Circuit Court.

12. The appeal of the Compagnie Française came on to be heard in the Supreme Court with the appeals of the Britannia from the decree dismissing her libel against the Beaconsfield, for damage sustained by the vessel itself, and from the decree sustaining the libel of the Beaconsfield against her for like damage sustained in the collision.

13. In the Supreme Court both vessels were found to have been in fault, and a mandate issued directing the decree of the Circuit Court to be reversed, and the cause to be remanded, with directions to enter a decree in accordance with the opinion of such court, and for further proceedings in conformity, etc.

14. Upon the further proceedings so ordered, an affidavit was filed showing that a telegram had been received from the owners of the Beaconsfield as follows: "You must not consent to any decree in our names, except against Britannia for half damages. We only agreed to be libellants as bailees of cargo against Britannia; we forbid our names being used in any decree against Beaconsfield for loss of cargo. Please do needful to give effect to this. (Signed) Cleugh, Cotton." A like telegram was addressed by libellant Cotton to his own counsel.

15. Libellant then moved, June 1, 1894, that the libel be amended by substituting the name of Albert W. Sanbern, owner of the cargo of the Beaconsfield, as sole libellant in the place of John Lucas Cotton, and for the entry of a final decree in the name of Sanbern. This motion was opposed by Elizabeth Cleugh, claimant of the Beaconsfield, and by the sureties, but was granted by order of June 4, 1894, and on the same day, a decree was entered

1. Whether, in entering said final decree, condemning each vessel in a moiety of said damages, the Circuit Court obeyed. the mandate of the Supreme Court.

2. Whether, upon the above statement of facts, the libellant, Albert W. Sanbern, was entitled to a final decree condemning the steamship Beaconsfield, her engines, tackle, apparel, and furniture, in a moiety of the cargo damage, amounting to $31,526.64, as adjudged in the said final decree.

3. Whether, upon the above statement of facts, the libellant, Albert W. Sanbern, was entitled to judgment against William Libbey, surety, in the sum of $23,000, as directed by the said order of June 12, 1894, and as adjudged in the said judg-

in favor of Sanbern, as owner of the cargo, against the Britannia and Beaconsfield for the sum of $63,053.28, and condemning each vessel for one-half of this amount, namely, $31,526.64. By this decree, the stipulators on the part of both steamships were ordered to show cause why execution should not issue against them for the amount of their stipulations.

16. The sureties upon the stipulation of the Beaconsfield made return to the order to show cause, alleging the filing of the libel by Cotton, master, and Cleugh, owner of the Beaconsfield, as bailees of the cargo; that there was no allegation of fault on the part of the Beaconsfield in this libel, or in their answer to the petition of the Compagnie Française; that the question of liability between the Beaconsfield and the libellants was never actually litigated, and the bills of lading under which the goods were carried had never been interposed by way of defence; that at the time the stipulation was given, Cotton and Cleugh were the parties libellant, and continued to be such until after the final decree in the District Court, when the libel was amended by dropping the name of George Cleugh, who had died, and continuing it in the name of Cotton alone, although Elizabeth Cleugh, as administratrix of the co-libellant, was substituted in George Cleugh's place as claimant; that after the mandate was handed down, the libel was again amended, by substituting the name of Sanbern, as owner of the cargo, in place of Cotton, one of the bailees. By reason of these matters, Libbey, the surviving surety, claimed to be exonerated from his liability on the stipulation of value of January 10, 1887. An order was, however, entered directing judgment and execution against Libbey, in the amount of his stipulation, $23,000, and judgment was accordingly entered against him.

17. Thereupon Elizabeth Cleugh, claimant of the Beaconsfield, appealed from the decree against the steamer, and William Libbey, surety, appealed from the judgment against him, to the Court of Appeals, each assigning separate errors, and bringing up the matters aforesaid for review by such court. Meantime the decree against the Britannia for a moiety of the damages had been paid.

ment entered pursuant to the said order, and filed June 12, 1894.

*Mr. J. Parker Kirlin* for appellants.

*Mr. William G. Choate* and *Mr. Sidney Chubb* for appellee.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

Stripped of its complication of libels and cross libels, this case is by no means difficult to understand. The Beaconsfield having been sunk in a collision with the Britannia, her master and owner, as bailees of her cargo, proceeded against the Britannia for damages done to such cargo. This they had a right to do. It is perfectly well settled that the carrier is so far the representative of the owner that he may sue in his own name, either at common law or in admiralty, for a trespass upon or injury to the property carried. If a cargo be damaged by collision between two vessels, the owner may pursue both vessels, or either, or the owner of both or either; and in case he proceed against one only, and both are held in fault, he may recover his entire damages of the one sued. A person, who has suffered injury by the joint action of two or more wrongdoers, may have his remedy against all or either, subject, however, to the condition that satisfaction once obtained is a bar to any further proceeding. *The Atlas*, 93 U. S. 302, 315; *Lovejoy* v. *Murray*, 3 Wall. 1. Did the case rest here, there could be no doubt of the right of the libellant to recover the whole damage to the cargo of the Britannia, although, as owner of the Beaconsfield herself, Cleugh could recover only a moiety of his damage to the vessel, in case the collision were adjudged to be the mutual fault of both vessels.

By general admiralty rule 59, however, it is provided that "in a suit for damage by collision, if the claimant of any vessel proceeded against . . . shall, by petition, on oath, . . . showing fault or negligence in any other vessel con-

tributing to the same collision, and the particulars thereof, and that such other vessel, or any other party, ought to be proceeded against in the same suit for such damage, pray that process be issued against such vessel or party to that end, such process may be issued, and, if duly served, such suit shall proceed as if such vessel or party had been originally proceeded against."

Pursuant to this rule, the French company, owner of the Britannia, filed its petition, alleging fault on the part of the Beaconsfield, and praying that she might be proceeded against in the same suit for such damage. This was done, and the litigation resulted in a decree of the District Court dividing the damages. A moiety of the decree was really against the libellants, as owner and master of the Beaconsfield, or rather against Libbey and Magoun, sureties, upon their stipulation.

Both parties appealed to the Circuit Court, which reversed the decree of the District Court, and adjudged the Britannia to be solely in fault. The owner of the Britannia appealed, but Cotton, master of the Beaconsfield, who in the meantime had become sole libellant, did not appeal from the decree dismissing his libel against his own vessel, for the obvious reason that his position as libellant of his own vessel for damage to her cargo was forced upon him by the act of the French company, and conflicted with his interest as representing the owner of the Beaconsfield. In this court, the decree of the Circuit Court was reversed, and the case remanded for further proceedings in conformity with the opinion. This opinion stated that the conclusion reached in this court was the same as that arrived at in the District Court, "and accordingly, we reverse the three decrees, and remand the causes to the Circuit Court, with directions to enter decrees in accordance with this opinion, that both vessels were in fault, and that the damages should be divided." 153 U. S. 144. The result of this was virtually a restoration of the decree of the District Court dividing the damages and awarding to Cotton, master of the Beaconsfield, and bailee of her cargo, a decree against the Beaconsfield for one-half the damages.

In this juncture, the proctors for Elizabeth Cleugh, administratrix, (who in the meantime had become owner of the Beaconsfield,) and Cotton, were instructed by their clients not to consent to any decree against the Beaconsfield, upon the ground that they, Cotton and Cleugh, had only consented to be libellants, as bailees of the cargo, against the Britannia, and they (the proctors) were forbidden to use their names for any decree against the Beaconsfield. Upon libellant's motion, Sanbern, the owner of the cargo, was then substituted as libellant in the place of Cotton, and a final decree entered against the Beaconsfield in the Circuit Court for a moiety of the damages, and the sureties ordered to show cause why execution should not issue against them.

We know of no reason why this decree should not have been granted. Sanbern had a right to suppose that his interests as owner of the cargo would be protected by Cotton, who was suing as his bailee. Had he sued in person, he could, and probably would, have libelled both vessels, and ought not to be prejudiced by the fact that Cotton, assuming to act for him, libelled but one. When the Beaconsfield was drawn into the litigation by the petition of the French company, and his own vessel thus made to respond to his libel, Cotton should have either withdrawn from the suit, and asked that Sanbern be substituted, or in his answer to the petition of the French company should at least have set up any defence he might have had against the owner of the cargo, arising under the bill of lading or from any other cause. If the attention of the court had then been drawn to the fact that Cotton was occupying inconsistent positions, it would doubtless have ordered the owner of the cargo to be substituted for him as libellant. Had no petition been filed against the Beaconsfield by the French company, the case would have stood quite differently, as there would have been no suit against the Beaconsfield upon which a decree could have been rendered. The failure of Cotton to call the attention of the court to the inconsistent positions occupied by him, or in answering the petition of the French company, to claim any defence arising upon the bill of lading or otherwise, was ample authority for

the court to enter a decree for a moiety of damages against the Beaconsfield.

The failure of Cotton, acting as bailee of the cargo, to appeal from the decree of the Circuit Court dismissing his libel as against his own vessel, is a technical defence which ought not to prejudice the owner of the cargo. If Sanbern had then been the libellant, and had failed to appeal from the decree dismissing his libel as against the Beaconsfield, possibly he might be held to be estopped; but he cannot be estopped by the failure of Cotton, who was acting in his own interest in not appealing. In this particular the case is much like that of *The Umbria*, 11 U. S. App. 612, in which a decree was entered in the court below in favor of the owners of the cargo of a vessel sunk in a collision with another vessel, which was there found to be solely in fault; but on appeal by the owner of such vessel, the owners of the cargo not appealing, both vessels were found in fault, and a decree was entered dividing the damages. The owners of the cargo, though not appealing, were held to be entitled to a decree against the owner of the sunken vessel to the same extent as though they had appealed. This case goes to the extent of holding that, even if Sanbern himself had been the libellant, his failure to appeal from the decree of the Circuit Court, dismissing his libel as against the Beaconsfield, would not estop him from recovering against her, if such decree were reversed by this court, and both vessels adjudged to be in fault.

It is insisted, however, that the sureties on the stipulation were released by the amendments to the libel, first, continuing it in the name of Cotton alone after the death of Cleugh, instead of in the name of Cotton and Cleugh, as administratrix; and again, in substituting Sanbern as owner of the cargo instead of the original libellants. Stipulations in admiralty are not subject to the rigid rules of the common law with respect to the liability of the surety, and so long as the cause of action remains practically the same, a mere change in the name of the libellant, as by substituting the real party in interest for a nominal party, will not avoid the stipulation.

as against the sureties ; or, as it is stated in some cases, stipulations are to be interpreted as to the extent and limitation of responsibility created by them by the intention of the court which required them, and not by the intention of the parties who are bound by them. It was said by Judge Ware in *Lane* v. *Townsend*, 1 Ware, 286, 293: " If, therefore, there is an ambiguity in the terms of the stipulation, or the construction of them is doubtful, it is not the intention of the party for which we are to inquire, for the will of the party had nothing to do in determining its conditions ; the doubt must be removed by consulting the intention of the court, or the law which required the stipulation and dictated its terms." The introduction, however, of a new cause of action is something which the sureties are not bound to contemplate, and it necessarily follows that they cannot be held. This was the ruling of this court in the recent case of *The Oregon*, *ante*, 186, in which, after a libel had been filed for a collision, and the usual stipulation to answer judgment given, other libels for damages arising from the same collision were filed without a rearrest of the vessel, and it was held that this was a new cause of action, and the court acquired no jurisdiction to render a judgment against the sureties. See also *The North Carolina*, 15 Pet. 40.

The law upon this subject is nowhere better stated than in *The Nied Elwin*, 1 Dodson, 50, cited and abstracted in *The Oregon*, in which Sir William Scott held that, in a case of prize, the substitution of the Crown for the captors did not release the sureties, but that they could not be held for a new cause of action, viz., the intervention of hostilities between Great Britain and Denmark, after the stipulation was given. In respect to the first question he says : " I cannot entirely accede to the position which has been laid down on behalf of the claimant, that these bonds are mere personal securities given to the individual captors; because, I think, they are given to the court as securities to abide the adjudication of all events at the time impending before it. This court is not in the habit of considering the effect of bonds precisely in the same limited way as they are viewed by the courts of com-

mon law. In those courts they are very properly construed as mere personal securities for the benefit of those parties to whom they are given. In this place they are subject to more enlarged considerations; they are here regarded as pledges or substitutes for the thing itself, in all points fairly in the adjudication before the court."

Even if this action had been at common law, it is not altogether certain that the amendment, substituting the name of the real party in interest for a nominal party, would not be good. *Chapman* v. *Barney*, 129 U. S. 677. The obligation of the sureties to respond for the damage done by the Beaconsfield to her cargo was neither increased nor diminished by a mere change in name of the party libellant.

*All the questions certified are, therefore, answered in the affirmative.*