## THE EAGLE POINT.

(District Court, E. D. Pennsylvania. April 5, 1905.)

No. 73.

1. COLLISION—MEASURE OF DAMAGES RECOVERABLE BY CARGO OWNER—LAW GOVERNING.

The right of a cargo owner to be reimbursed for a loss by collision on the high seas does not arise from the statutes of any country, but from the general law maritime; and where both vessels were in fault the measure of his recovery from either one is a matter pertaining to the remedy, and governed by the law of the forum, and not of the flag.

2. SAME.

Where two British vessels are both held in fault for a collision on the high seas, in a suit in a court of admiralty of the United States the American rule, which permits a cargo owner to recover his full damages from either vessel, will be applied, and not the English rule, by which he can recover but half his loss from either.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 246, 296–298.]

3. SAME—INTEREST.

Interest allowed to cargo owners as part of the damages recoverable by them on account of a loss by collision.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 284.]

In Admiralty. Suit for collision. On final hearing.

Charles C. Burlingham, with Wing, Putnam & Burlingham, for libelant.

Frederick M. Brown, with Butler, Notman & Mynderse, for respondent.

Charles M. Hough, for intervening libelants.

J. B. McPHERSON, District Judge. This is a continuation of the proceeding already reported in 114 Fed. 971, and 120 Fed. 449, 56 C. C. A. 599. Both the Biela and the Eagle Point having now been declared at fault for the collision, which took place upon

the high seas, it remains to decide whether certain owners of the Biela's cargo shall have their damages measured by the English or by the American rule. Some of the owners have settled their claims, others have intervened by leave of court, and the libelant represents the rest that have not been paid. If the English rule is to be applied, the Eagle Point is only liable for one-half the damages: The Milan, 5 Law Times (N. S.) 590. If the American rule is the proper test, the owners may recover full damages from either vessel: The Atlas, 93 U. S. 302, 23 L. Ed. 863; The Beaconsfield, 158 U. S. 303, 15 Sup. Ct. 860, 39 L. Ed. 993; The New York, 175 U. S. 209, 20 Sup. Ct. 67, 44 L. Ed. 126, and cases cited in 3 Rose's Notes U. S. Reports, p. 976. Both vessels are British, as are some of the cargo owners; the rest being of American or of other nationality. It does not seem to me, however, that the nationality of the owners should be taken into account. A test should be adopted that will apply uniformly to all owners of cargo that present themselves as suitors before the court; otherwise we should have the absurdity of a recovery in full by one owner because he happens to be American, and a partial recovery by another simply because he happens to be English, while the injury and the loss, the tribunal and the form of procedure, are identical in both cases. The test, I think, must be found either in the nationality of the vessels, or by determining whether the measure of damages is a matter of substantive law or a matter of remedy only. There are many decisions which hold that a vessel upon the high seas is to be regarded as a floating piece of territory, which continues to belong to the nation where she is registered, and is governed by the law of the flag. It may often be the case that an act done or a fault committed upon a vessel on the high seas may give rise to a right which has its source only in the law of the flag; and, when this is the case, such a right will ordinarily be enforced in the tribunals of another sovereignty, even if the law of the forum differs in this respect. For example, if the law of the flag permits recovery for death caused by negligence upon the high seas, such recovery may be permitted in a forum within whose territorial limits the ordinary law denies the right to damages for the death of a human being. But while this is true, the subject need not be pursued, I think, if I am right in believing that the proper measure of damages in the present case is to be found by applying the rule that subjects a suitor to the law of the forum wherever remedies, as distinguished from rights, are concerned. As was said by the Supreme Court in Northern Pac. Ry. Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958:

"The statute of another state has, of course, no extraterritorial force, but rights acquired under it will always, in comity, be enforced, if not against the public policy of the laws of the former. In such cases the law of the place where the right was acquired or the liability was incurred will govern as to the right of action, while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought. And we think the principle is the same, whether the right of action be ex contractu or ex delicto."

See, also, Story, Conflict of Laws (7th Ed.) §§ 556–558.

The origin of a cargo owner's right to be compensated for his loss is not a British statute, or any peculiar doctrine of English jurisprudence, but the common law, or the general law maritime, as it prevails in the courts of English-speaking communities. A tort committed on the high seas, by which damage is inflicted upon property, gives rise at once to a right of action against the wrongdoer in favor of the injured owner, and this right may be enforced in any tribunal having common law or admiralty jurisdiction that will undertake to settle the dispute. The owner's right is to recover full compensation for his loss, so far as there may be available property of the wrongdoer amenable to the process of the court, but the remedy by which satisfaction is sought may differ according to the practice of different tribunals. In a British court, a cargo owner who has suffered loss by the concurring fault of two vessels must pursue them both, if he is to obtain full satisfaction, and can only recover one-half of his loss from either, while an American court permits him to choose whichever wrongdoer he pleases, and to force full satisfaction from him alone. But this concerns the remedy, and not the right. In both courts the right is the same—a right to be compensated in full—although the method of obtaining such compensation differs. By the custom of one tribunal, two executions must be issued—one against each wrongdoer—while the custom of the other permits complete satisfaction to be obtained upon a single process against one of the offending ships alone. But this is a difference of remedy only, and both the English and the American courts recognize that their differences in this respect are differences in practice, and not in substantive law. In The Milan, supra, Dr. Lushington said:

"First, it is clear that, when A. B. has received a loss from the misconduct of C. D. and E. F., A. B. ought to be entitled to a full and complete recovery; but it is not so clear that A. B. should be entitled to recover from one the whole amount of damage occasioned by the acts of both. Strict justice would say that the burden of making good the loss should fall in proportion to their responsibility, but that, in the case supposed, is impossible to be ascertained. The only inference that I can draw from this view of the case is that, beyond all doubt, an action would be maintainable, though to what extent damage might be recovered might be a question of doubt. Secondly, the practice of the court of admiralty appears to have been uniform on this point, namely, that where both ships are to blame, and where the provisions of the statute do not interfere, the owners of cargoes, equally with the owners of ships, recover a moiety of the damage."

The court then referred to the case of Hay v. Le Neve, 2 Shaw (Scotch Appeals Cases) 395, and other decisions, and proceeded:

"The question which now engages my attention is this: Whether it is consonant with justice that the owner of a cargo, who is not the owner of the ship, should recover only a moiety from one of two ships, both in fault. I am aware that much may be said on this point, but perfect justice, if it could be administered, would afford a remedy in proportion to the culpability of each. That, in cases of collision, where both are to blame, is, generally speaking, impossible, and therefore, as a kind of judicium rusticorum, the party sued is liable to one half the damage only, and the innocent owner of the cargo is left, as to the other half, to sue the owner of the ship on board which his goods were carried. It might be that the form of the

action would be different in another court. I do not see injustice in this arrangement. Thirdly, is there any principle of the common law, or are there any adjudged cases, which ought to lead me to either of the two following conclusions—either to refuse to give any damages at all, or to decree the full amount of the loss sustained? As to the refusal to decree any damages at all, I must first be satisfied that the case at common law is so strong that I ought to overrule what was done in Hay v. Le Neve; admitting, however, that the point was not specially raised and considered. With respect to the authority of the superior courts, and of their decisions, upon the court of admiralty, I apprehend the rule to be that the court of admiralty implicitly obeys the decision of the House of Lords and the privy council or judicial committee; that it also follows the courts of common law in all constructions of statutes (I have lately done so, though with great doubt); that it would always decide in consonance with a series of cases adjudged at common law, but that it would not be bound by one or two cases, especially if they had been doubted by the profession. Then what help can I derive from the rules and decisions of common law? First, there is the general rule that in cases of collision a party injured may recover from the owner of the ship causing the loss the whole damage, but then he must not have been guilty of any error or misfeasance himself, contributing to cause the damage. There is, I think, no case which applies to that of the owner of a cargo on board one of two delinquent ships. The principle, I apprehend, of this rule of common law, is that a party shall not recover where he himself is in any degree to blame for the loss. Independently of cases, can it be reasonably contended that the owner of a cargo is responsible for the acts of the master and crew of the vessel in which his goods are laden; he himself not being the owner or part owner of the ship? It is undoubtedly clear that he (the owner of the cargo) cannot on any supposition have contributed to the loss—certainly not by himself personally, certainly not by his agents—for the master and crew are in no respect under his control. It is difficult to conceive upon what principle it can be contended that he is particeps criminis, when he is not so either as principal or agent.

\* \* \* \* \* \* \* \* \*

"I am therefore clearly of opinion that, to the extent of one-half the damage, the owner of this cargo is entitled to compensation. There is, I apprehend, no doubt at common law that he could recover damages for the whole loss if he could recover at all; but I must be governed, where they apply, by the rule and practice of the court of admiralty. It is true that the owner of the cargo is to be considered a perfectly innocent person, and that he does not stand in the same position as a plaintiff, being the owner of one of two delinquent ships, and, if these were the only facts that were taken into consideration, it might well be that the owner of the cargo would recover the whole; but this is not the view taken by admiralty law. It endeavors—whether wisely or not, I do not say—to administer more equitable justice, and, where both parties are delinquent, to divide the whole loss; it being impossible to ascertain the proportionate culpability. I apprehend that, carrying out this principle according to its practice, the court of admiralty would say, 'The innocent owner of a cargo, proceeding against one only of two delinquent ships, shall recover only a moiety of the damage, because the court can affix to the vessel proceeded against only a moiety of the blame; and, with respect to the other half of the loss, the owner shall be left to his remedy against the other vessel, which has been held to be equally delinquent.' It may be very true that this principle is not altogether reconcilable with the rules and practice of common law, and much might be said as to the equity of its operation and effect; but still I think that this resolution of the question is most conformable to the case of Hay v. Le Neve and other cases, and therefore my decree must be that the plaintiff do recover a moiety of the damage only."

## And the Supreme Court, in The Atlas, supra, is quite as distinct:

"Satisfaction to the libelant for the injury sustained is the true rule of damages in a cause of collision, by which is meant that the measure of com-

pensation shall be equal to the amount of injury received, and that the same shall be calculated for the actual loss occasioned by the collision, upon the principle that the sufferer is entitled to complete indemnification for his loss, without any deduction for new materials used in making repairs, as is prescribed in the law of maritime insurance.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Two admissions are made by the court in the case of The Milan which it is important to notice, as they are undoubtedly correct, and will afford much aid in disposing of the question involved in the present record: (1) That the owner of the cargo, in such a controversy, could recover for his whole loss in an action at law; (2) that the owner of the cargo, in such a case, is to be considered as a perfectly innocent party.

"Nothing is more clear than the right of a plaintiff, having suffered such a loss, to sue in a common-law action all the wrongdoers, or any one of them, at his election; and it is equally clear that, if he did not contribute to the disaster, he is entitled to judgment in either case for the full amount of his loss. He may proceed against all the wrongdoers jointly, or he may sue them all or any one of them separately; but if he sues them all jointly, and has judgment, he cannot afterwards sue them separately, or if he sues one separately, and has judgment, he cannot afterwards sue them all in a joint action, because the prior judgment against one is, in contemplation of law, an election, as to that one, to pursue his several remedy, but it is no bar to the suit for the same wrong against any one or more of the other wrongdoers.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Contributory negligence on the part of the libelant cannot defeat a recovery in collision cases if it appears that the other party might have prevented the disaster, and that he also did not practice due diligence, and was guilty of negligence, and failed to exercise proper skill and care in the management of his vessel. Proof of the kind will defeat a recovery at common law, but the rule in the admiralty is that the loss in such a case must be apportioned between the offending vessels, as having been occasioned by the fault of both; but the rule of the common law and of the admiralty is the same where the suit is promoted by an innocent party, except that the moiety rule may be applied in the admiralty, if all the parties are before the court, and each of the wrongdoers is able to respond for his share of the damage. Subject to that qualification, the remedy of the innocent party is substantially the same in the admiralty as in an action at law; the rule being that in both he is entitled to an entire compensation from the wrongdoer for the injury suffered by the collision.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Even suppose that the case of The Milan is a correct exposition of the admiralty law as administered in the jurisdiction where the decision was made; still it cannot control the question before the court, for the reason that the rule of practice here is different, as is clearly shown by the judgment of this court delivered at the last term of court. The Alabama and The Gamecock, 92 U. S. 695 [23 L. Ed. 763]."

This being so, it seems to me that the question under consideration is to be disposed of by applying the well-settled rule that the remedy of the forum is to control, where this differs from the remedy given by the law of the place where the tort was committed, which I shall assume for present purposes to be the law of Great Britain, since both ships were British, and the collision occurred on the high seas.

Much reliance is placed by the respondent upon a dictum of Justice Bradley to be found in his opinion delivered in The Scotland, 105 U. S. 24, 26 L. Ed. 1001. The principal question for decision in that case was whether a British steamship was entitled to the benefit of the American limited liability statutes, which restrict the

obligation to respond for injury done by collision to the value of the offending vessel and her freight after the collision occurs. As preliminary to the consideration of that question, the court proceeded to lay down certain general propositions, and in the course of such statement used the language relied upon, which I have italicized in quoting the following paragraph:

"In administering justice between parties, it is essential to know by what law or code or system of laws their mutual rights are to be determined. When they arise in a particular country or state, they are generally to be determined by the laws of that state. Those laws pervade all transactions which take place where they prevail, and give them their color and legal effect. Hence, if a collision should occur in British waters, at least between British ships, and the injured party should seek relief in our courts, we would administer justice according to the British law, so far as the rights and liabilities of the parties were concerned, provided it were shown what that law was. If not shown, we would apply our own law to the case. In the French or Dutch tribunals they would do the same. But if a collision occurs on the high seas, where the laws of no particular state have exclusive force, but all are equal, any forum called upon to settle the rights of the parties would prima facie determine them by its own law, as presumptively expressing the rule of justice; *but, if the contesting vessels belonged to the same foreign nation, the court would assume that they were subject to the law of their nation, carried under their common flag, and would determine the controversy accordingly.* If they belonged to different nations, having different laws, since it would be unjust to apply the laws of either to the exclusion of the other, the law of the forum (that is, the maritime law as received and practiced therein) would properly furnish the rule of decision. In all other cases each nation will also administer justice according to its own laws. And it will do this without respect of persons—to the stranger as well as to the citizen. If it be the legislative will that any particular privilege should be enjoyed by its own citizens alone, express provision will be made to that effect. Some laws, it is true, are necessarily special in their application to domestic ships, such as those relating to the forms of ownership, charter party, and nationality. Others follow the vessel wherever she goes, as the law of the flag—such as those which regulate the mutual relations of master and crew, and the power of the master to bind the ship or her owners. But the great mass of the laws are, or are intended to be, expressive of the rule of justice and right applicable alike to all."

I think it is evident, on considering this whole paragraph, that the court was not discussing remedies at all, but rights, and that what is said concerning the applicability of the law of the flag should be so understood. If this view is correct, Justice Bradley's language is not opposed to the conclusion which I have felt obliged to reach.

Other aspects of the question decided in this case were argued by counsel, both orally and upon their careful and satisfactory briefs, but it is not necessary to go into them, if my conclusion upon the principal point is correct. As to the allowance of interest, not eo nomine, but as part of the damages, I see no reason why it should not be added to the principal sums that have been agreed upon by the parties.

A decree may be entered in accordance with this opinion, with costs to the libelant.