THE CEREA.

IL PIEMONTE.

(District Court, S. D. New York. December 5, 1906.)

1. ADMIRALTY—SUBSTITUTION OF NEW OWNER AS CLAIMANT OF LIBELED VESSEL.

The substitution of a new owner as claimant of a libeled vessel which has been released on stipulation is not the bringing in of a new party, and may be allowed without notice to the surety on the stipulation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, §§ 414–429.]

2. SAME—BRINGING IN NEW PARTIES.

In a suit in admiralty by a banker who advanced money on bills of lading of a cargo to recover from the vessel for an alleged wrongful or unauthorized delivery of the cargo to persons who sold the same and retained the proceeds, where it appears from the pleadings that, if improper delivery was made, claimant may have a claim over against such persons, he is entitled by analogy to admiralty rule 59 to have them brought in, notwithstanding the fact that an action at law has been brought against them by libelant which is pending.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, §§ 414–429.]

In Admiralty. On motion to substitute claimants and for leave to bring in new parties.

F. W. & A. E. Hinrichs, for libelants.
W. J. Underwood, for Brown & Seccomb.
Convers & Kirlin, for claimants.

ADAMS, District Judge. This is a motion on the part of the steamships Cerea and Il Piemonte for a substitution of the Navigazione Alta-Italia, as owner of the said steamers, in place of Henry Feltman, deceased, in these actions, which were brought to recover the value of certain consignments of lemons alleged to have been the libellants' property and wrongfully delivered by the various defendants to W. H. Westervelt & Company, a firm of fruit importers, who, it is claimed, had pledged the lemons to the libellants, who are bankers, to cover various advances made by them. It appears that actions were brought against the steamers by the libellants and thereupon claims were duly made by the said Feltman and stipulations for value given by him. Subsequently he died and it is now sought to substitute the said corporation, which, it is alleged, on information and belief, has become the sole owner of the steamships.

It is urged by the libellants in opposing the motions, that (1) if the motions are granted unconditionally, the surety given upon the stipulations when the vessels were released will be discharged principally because the surety has not been served with notice of these motions, (2) there is no definite moving party before the court, (3) that there is no authority for the granting of the motion under analogy to the 59th Rule or otherwise, and (4) that these motions should be denied on the ground of laches.

The claimant contends that the substitution should be allowed because the effect of it is only to bring in the real owner and one who is entitled to appear and to be actually represented in a proceeding which involves its own property, and cites The Beaconsfield, 158 U. S. 303, 15 Sup. Ct. 860, 39 L. Ed. 993. There a question as to the liability of the sureties where a new libellant was substituted arose and it was held that in admiralty, and perhaps at common law, such an act would not change the original liability and the surety would remain bound. No real distinction in principle can be drawn between the substitution of one claimant for another instead of one libellant for another, and The Beaconsfield is apparently in point here and an authority for the granting of the motion. The libellants urge that the case is covered by The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943, where it was held that the obligors in a stipulation given for the release of a vessel libelled for collision are not, in the absence of an express agreement to that effect, responsible to persons in the suit, intervening after the vessel's release. The inapplicability of that case is shown by the fact that there the intervening parties appeared after the stipulation was given and the vessel released. In The Beaconsfield, there was merely the substitution of a new owner, not a new party in the sense of The Oregon situation, where the stipulation was given to secure the original libellants and afterwards new libellants appeared who, upon recovering judgments, would seek to avail themselves of a stipulation given to answer the original libel claims. The court there said,

after quoting the language of the stipulation (page 206 of 158 U. S., page 812 of 15 Sup. Ct. [39 L. Ed. 943]):

"Here is a simple agreement to become responsible for the final decree rendered in the cause in which the stipulation is given, and the words 'for the benefit of whom it may concern' refer undoubtedly to the owners of the Clan Mackenzie, in whose behalf Simpson, the master, had filed the libel. We know of no authority which permits the liability of sureties upon such a stipulation to be enlarged by the inclusion of claims other than the ones which the stipulators agree to pay. To such a claim the surety may well reply non in hæc fœdera veni. The stipulators may be so well satisfied that the claimant has a defence to the original libel as to be willing to take upon themselves the contingency of a decree requiring its payment, but they may neither know, nor be able to conjecture, what other demands may be made against the property."

The court said in The Beaconsfield, 158 U. S. 310–312, 15 Sup. Ct. 860, 863, 39 L. Ed. 993.

"It is insisted, however, that the sureties on the stipulation were released by the amendments to the libel, first, continuing it in the name of Cotton alone after the death of Clough, instead of in the name of Cotton and Clough, as administratrix; and again, in substituting Sanbern as owner of the cargo instead of the original libellants. Stipulations in admiralty are not subject to the rigid rules of the common law with respect to the liability of the surety, and so long as the cause of action remains practically the same, a mere change in the name of the libellant, as by substituting the real party in interest for a nominal party, will not avoid the stipulation as against the sureties; or, as it is stated in some cases, stipulations are to be interpreted as to the extent and limitation of responsibility created by them by the intention of the court which required them, and not by the intention of the parties who are bound by them. It was said by Judge Ware in Lane v. Townsend, 1 Ware, 286, 293, Fed. Cas. No. 8,054: 'If, therefore, there is an ambiguity in the terms of the stipulation, or the construction of them is doubtful, it is not the intention of the party for which we are to inquire, for the will of the party had nothing to do in determining its conditions; the doubt must be removed by consulting the intention of the court, or the law which required the stipulation and dictated its terms.' The introduction, however, of a new cause of action is something which the sureties are not bound to contemplate, and it necessarily follows that they cannot be held. This was the ruling of this court in the recent case of The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943, in which, after a libel had been filed for a collision, and the usual stipulation to answer judgment given, other libels for damages arising from the same collision were filed without a rearrest of the vessel, and it was held that this was a new cause of action, and the court acquired no jurisdiction to render a judgment against the sureties. See, also, The North Carolina, 15 Pet. 40, 10 L. Ed. 653.

The law upon this subject is nowhere better stated than in The Nied Elwin, 1 Dodson, 50, cited and abstracted in The Oregon, in which Sir William Scott held that, in a case of prize, the substitution of the Crown for the captors did not release the sureties, but that they could not be held for a new cause of action, viz., the intervention of hostilities between Great Britain and Denmark, after the stipulation was given. In respect to the first question he says: 'I cannot entirely accede to the position which has been laid down on behalf of the claimant, that these bonds are mere personal securities given to the individual captors; because, I think, they are given to the court as securities to abide the adjudication of all events at the time impending before it. This court is not in the habit of considering the effect of bonds precisely in the same limited way as they are viewed by the courts of common law. In those courts they are very properly construed as mere personal securities for the benefit of those parties to whom they are given. In this place they are subject to more enlarged considerations; they are here regarded as pledges or substitutes for the thing itself, in all points fairly in the adjudication before the court.'

Even if this action had been at common law, it is not altogether certain that the amendment, substituting the name of the real party in interest for a nominal party, would not be good. Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800. The obligation of the sureties to respond for the damage done by the Beaconsfield to her cargo was neither increased nor diminished by a mere change in name of the party libellant."

In the one case, The Oregon, it was adding new demands; in the other, The Beaconsfield, it was merely substituting a new name for a party already interested.

Another part of the motion asks for leave to bring in by petition other parties, which it is contended were necessary in this litigation to enable the court to render justice in the matter.

It appears that these actions are but two of several similar cases which are before the court. They are all brought by certain bankers to recover advances alleged to have been made against various bills of lading covering shipments of lemons and oranges on the various vessels specified in the several actions. The credit is alleged to have been given to Westervelt & Company, a firm engaged in the importation of fruit from Italy. The libellants claim that two bills of lading were issued in Italy for these shipments, which were sent to London and thence to New York and advances obtained on them. It is alleged that Westervelt & Company by means of additional or duplicate bills of lading made entry of the consignments in the custom house, received permits therefrom, obtained possession of the goods from the vessels and had the goods sold by the firm of Brown & Seccomb, fruit auctioneers. It is further alleged that the delivery by the steamships of the fruit was in accordance with the usual procedure and long established custom of the trade in New York and that the goods in fact were delivered to Westervelt & Company and to Brown & Seccomb and were sold by the latter firm; that the proceeds of the sale were retained in part by Brown & Seccomb and transferred in part to Westervelt & Company.

It would seem that if the libellants are entitled to recovery against the vessels on the theory of improper delivery, that the claimant may have a right of recovery against the parties sought to be brought in who, it is alleged, obtained possession of the goods or their proceeds. It would be consistent with the practice of the court, under analogy to the 59th Rule, to have all the parties before it so that complete justice can be rendered in one action. It does not appear how the libellants can be prejudiced by such a course, unless it would follow therefrom that they would be deprived of a right of a trial by jury in the actions which, they allege, they have brought against the persons sought by the claimant to be made parties here. The libellants have invoked the jurisdiction of this court and subjected themselves to the equitable principles which prevail here. It appears that if the claimant can in any way be protected by the presence of the other parties, whom in the event of an adverse decision here, it would have to sue to indemnify itself, it should have the right of such indemnity in the one action.

The answers to the libellants' objections seem to be:

(1) It does not apparently affect the matter because no notice of

the motion has been given to the surety; (2) There is a definite moving party before the court. If it should turn out upon the trial that the claimant now seeking a substitution is not entitled thereto as a matter of fact the matter can then be properly adjusted; (3) There is ample authority for the granting of the motion. The contract is maritime and the court is justified in looking into all its breaches and to afford adequate relief. See Gow v. William W. Brauer S. S. Co. (D. C.) 113 Fed. 672, 675, and authorities cited on the latter page; (4) There have been no laches here sufficient to defeat the motion. Some delay has occurred through the substitution of the new proctors and owing to the summer season but it is of no real importance.

The motions are granted.