### THE STANDARD COASTER.
### THE ALAMAC.
### THE LIBERTY.
### THE PATRICIA.

Nos. C–2098, C–2525, C–2570, C–2577.

District Court, E. D. New York.

Jan. 9, 1932.

Rehearing Denied March 8, 1932.

See, also, 50 F.(2d) 623.

Howard W. Ameli, U. S. Dist. Atty., of Brooklyn, N. Y., for the United States.

Louis Halle, of New York City, for claimants.

SLICK, District Judge.

About 1:30 a. m. on January 18, 1928, Coast Guard patrol boat 204 seized the British motor ship Standard Coaster with a cargo of 5,140 cases of intoxicating liquor approximately half a mile off Wards Island Point, Staten Island, N. Y. She was running without lights, and when hailed by the boatswain of the Coast Guard patrol boat continued under way so that the officers on the Coast Guard boat were obliged to scramble aboard as she was running. Upon demand no manifest for the cargo on board the Standard Coaster was produced.

The Standard Coaster was registered as a British boat at Le Have, Nova Scotia. The crew was indicted for possession and transportation of intoxicating liquor and for smuggling.

Before disposition of the criminal case the government filed a libel charging that the vessel was subject to forfeiture under the Tariff Act of 1922 (sections 433, 453, 584, 593 [19 USCA §§ 243, 266, 486, 496, 497]), for failure of the master to produce a manifest, and for smuggling and introducing into the United States the 5,140 cases of rye and Scotch whisky found on board, and for failure of the master to report the arrival of the ship to the collector of customs.

After the libel was filed the Standard Steamships, Limited, of Halifax, Nova Scotia, asked for an appraisal and for release of the vessel on bond. Appraisal was had and the vessel was valued at $8,000, and the Standard Steamships, Limited, filed a bond in that amount with the Equitable Casualty & Surety Company as surety in the sum of $9,-000.

Subsequent to these proceedings the crew of the Standard Coaster were indicted on three counts as above stated. They pleaded guilty to possession and transportation, and the count charging violation of the tariff law was nolle prosequied by the district attorney.

The government then asked and obtained leave to amend its libel, which was done, and the amended libel was filed charging all the causes of forfeiture pleaded in the original libel, except the cause of forfeiture under section 3450 of the Revised Statutes (26 USCA §§ 1181, 1182), and, in addition, charging that the Standard Coaster and her cargo are subject to forfeiture under section 26 of title 2 of the National Prohibition Act (27 USCA § 40).

■ Claimant argues that the government cannot proceed with its forfeiture under the custom and tariff laws because the ship, admittedly engaged in smuggling, was carrying liquor, and no other cargo, and that the government is precluded from proceeding under the National Prohibition Act because the court does not have actual possession of the res—the ship.

This is rather an anomalous position, but is consistent with the usual conduct of the bootleg fraternity. No class are so loud and vociferous in demanding that the Constitution be rigidly enforced in regard to search and seizure and other matters, as those who persistently violate the Eighteenth Amendment. At the trial claimant shrewdly and suavely assisted the government to prove a flagrant violation of the National Prohibition Act. In fact, this violation of the law was admitted with much gusto, and then the claimant strenuously urged this admitted guilt as a reason why the court should dismiss the libel.

The Richbourg case (Richbourg Motor Co. v. U. S. [Davies Motors, Inc., v. U. S.] 281 U. S. 528, 50 S. Ct. 385, 388, 74 L. Ed. 1016, 73 A. L. R. 1081) is relied on to sustain this contention. This case, like all others, should be studied having in mind the facts and the principles involved. It should be remembered that Mr. Justice Stone in his decision in the Richbourg Case was ruling and writing with the rights of innocent lienors in mind. He and the Supreme Court were not announcing a rule of procedure that would enable the guilty to escape, but one that would protect the rights of the innocent. In this decision, occupying eight pages, the rights of innocent lienors are mentioned eleven times, and in the last paragraph occurs this very suggestive language: "It is unnecessary to say whether, if for any reason the seizure cannot be made or the forfeiture proceeded with, prosecution for an offense committed must be had under the National Prohibition Act rather than other statutory provisions."

Conceding without admitting that the claimant's position is correct, and that the government cannot proceed under the National Prohibition Act because it does not have possession of the ship, it would seem under this clause in the opinion in the Richbourg Case that this decision does not preclude the government from proceeding under "other statutory provisions."

■ Counsel for claimant suggests that "it is not the function of a court to strain and stress under misguided or faulty proceedings instituted and relied upon by the government, but is to follow the law as it is laid down."

If my recollection serves me rightly, one of the first definitions learned in law school was that expounded in Blackstone's Commentaries, "Law is a rule of human conduct commanding what is right and prohibiting what is wrong."

True, it is necessary to have and follow rules of procedure, but the court should look through technicalities to the merits; should brush aside the entangling maze of legal and technical rules; should avoid being drawn into the quagmire of doubt and decide a matter such as this on strict principles of justice.

After the seizure claimant gave a bond reading as follows:

"Whereas, a libel was filed on the 31st day of March, 1928 by the United States of America against the British motor ship Standard Coaster for the reasons and causes in the said libel mentioned, and whereas the said vessel is in the custody of the Marshal under process issued therein:

"And whereas, a claim to said vessel has been filed by Standard Steamships Ltd. of Halifax, N. S. and the value thereof has been fixed by appraisement pursuant to an order of this Court, in the sum of Nine Thousand ($9000.00) Dollars, for the purpose of bonding, as appears by the report pursuant to said order and the parties hereby consenting and agreeing that if judgment passes against the claimant, as to the whole or any part of said vessel, and the claimant does not, within twenty days thereafter, pay into the Court the amount of the appraised value of such vessel, or such sum as the Court may decree, with costs, judgment shall be granted on the bond, on motion in open Court, without further delay; and it is further

"Agreed, that the said vessel shall not, during the continuance of this suit or until the final determination thereof, engage in the unlawful transportation of liquor from any foreign port or place to any portion of the United States, and the engagement in said unlawful liquor traffic in violation of the conditions of the bond shall not be conditioned upon the seizure of said vessel, but only such evidence shall be required as is satisfactory to this Court.

"Now, therefore, the condition of this stipulation is such that if the claimant herein and the Equitable Surety Company of the City and State of New York, and by occupation Surety, the stipulators undersigned, shall abide by all orders of the Court, interlocutory or final, and pay the amount awarded by the final decree rendered by this Court, or by any Appellate if an appeal intervene, then this stipulation to be void otherwise to remain in full force and virtue."

After the execution and filing of this bond the ship was released to its owner. Thereafter libelant applied for and obtained leave to amend as above stated, and the libel was amended to include as an additional cause of forfeiture an allegation of violation of the National Prohibition Act. The bond was to pay the value of the vessel ($9,000) if the claimant shall fail to pay any judgment the court may render or if the claimant shall fail to abide by any order, interlocutory or final, the court may make.

The amendment was in accordance with good practice, and was allowed by the court, and when made it became a part of the libel as originally filed. It is elementary that amendments to a pleading date back to the time of filing. Making the amendment was not bringing a new suit or filing a separate cause of action. The action is for forfeiture and is bottomed on several alleged causes, all growing out of the same transaction. An amendment to a libel does not release the sureties. Boden v. Demwolf (D. C.) 56 F. 846.

"Every person" bailing property under like circumstances "is considered as holding it subject to all legal dispositions of the court." Newell v. Norton, 3 Wall. 257 at page 266, 18 L. Ed. 271.

The bond is a substitute for the vessel, and the sureties are liable to all orders that the court could properly make if the bond had not been given and the ship itself were still in the custody of the court. U. S. v. Ames, 99 U. S. 35, 25 L. Ed. 295.

In The Beaconsfield, 158 U. S. 303 at page 310, 15 S. Ct. 860, 863, 39 L. Ed. 993, it was said: "Stipulations in admiralty are not subject to the rigid rules of the common law with respect to the liability of the surety, and, so long as the cause of action remains practically the same, a mere change in the name of the libelant, as by substituting the real party in interest for a nominal party, will not avoid the stipulation as against the sureties; or, as it is stated in some cases, stipulations are to be interpreted as to the extent and limitation of responsibility created by them by the intention of the court which required them, and not by the intention of the parties who are bound by them."

This case cites Lane v. Townsend, 1 Ware, 286, Fed. Cas. No. 8054, and quotes from that

case as follows: "If, therefore, there is an ambiguity in the terms of the stipulation, or the construction of them is doubtful, it is not the intention of the party for which we are to inquire, for the will of the party had nothing to do in determining its conditions; the doubt must be removed by consulting the intention of the court, or the law which required the stipulation and dictated its terms."

In United States v. Mosely et al. (D. C.) 8 F. 688 at page 690, it was said:

"The settled rule of the admiralty is that when a bond has been given for property under seizure, and the property has been delivered to the claimant, the bond stands in the place of and represents the res, and that whatever amendments the court might lawfully allow if the property had remained in the custody of the marshall, it can equally allow without affecting the liability of the bondsmen. Any other rule would be inconvenient and pernicious.

"Libels are often necessarily drawn in haste, and with an imperfect or mistaken conception of the facts. A bond for value may be tendered at once. If this be done and the vessel restored to the claimant, and if the libellant is from that moment deprived of all right to amend, except on pain of discharging the bondsmen and thus rendering the litigation fruitless, it is evident that the grossest injustice might be done in cases where the property has been removed from the jurisdiction and no reseizure can be made. The suggestion that the claimant and his sureties have agreed to be responsible only in case the property is condemned, 'for the reasons and causes mentioned in the libel,' involves a petitio principii. It is more accurate to say that they have agreed to be responsible in case the court, in the due and ordinary course of procedure, shall condemn the property; and the allowance of proper amendments must be deemed to have been contemplated as a possible or probable incident in the cause."

The value of the cargo in this case was $50,000, and the penalty against the master of the vessel should be in that sum and go against the vessel. The 5,140 cases of whisky should be forfeited and destroyed. The vessel should be declared forfeited, and the government should have judgment against the bond in the sum of $9,000, together with costs, if the claimant and surety do not pay the sum of $9,000 into court within twenty days from the entry of a decree.

The district attorney is requested to prepare a decree and have it presented on notice.

In the case of the Alamac, the facts were quite similar to the case of the Standard Coaster. The bond was in the sum of $3,000, and contained an additional clause as follows: "And it is also a further consideration that this stipulation takes the place of the vessel for all purposes."

In the case of the Alamac, the liquor should be destroyed and the government should have judgment for $3,000 and costs, provided that sum is not paid within twenty days after the decree is entered. A form of decree may be prepared and presented.

In the case of the Liberty, the bond contained the same provision as in the case of the Alamac.

The liquor should be ordered destroyed, and the government should have judgment on the bond, unless the principal and sureties pay the amount of the bond, which was in the sum of $850 and costs within twenty days from the rendition of the decree, and decree may be prepared and forwarded as in the case of the Alamac and the Standard Coaster.

In the case of the Patricia, in addition to the special provision in the bond in the Alamac and Liberty, there is another provision as follows: "And it is also a further condition that this bond for value shall remain in full force and effect as to any and all amendments that may be made to the original libel now on file in this court."

In this case the liquor is ordered destroyed, and the government should have judgment on the bond in the sum of $3,250 and costs, unless that amount and costs are paid into court within twenty days from rendition of the decree, and a decree may be prepared to that effect.