## THE PHONIX.

## THE GLADIATOR.

### (Circuit Court of Appeals, Second Circuit.   March 26, 1907.)

### Nos. 212, 213.

COLLISION—STEAM VESSELS MEETING—IMPROPER NAVIGATION.

Findings of the trial court which heard the testimony that a tug was solely in fault for a collision between a car float which she had in tow and a meeting steamship, on the ground that she failed in her duty to pass on the starboard side of the steamship as required by the position and courses of the two vessels, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from decrees of the District Court, Southern District of New York, which held the Gladiator solely in fault for a collision between a car float which she had in tow and the steamship Phonix.

W. S. Montgomery, Henry Galbraith Ward, and Robinson, Biddle & Ward, for appellant.

F. M. Brown and Butler, Notman & Mynderse, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM.   The evidence in this case is very conflicting, and we do not find in it sufficient to disturb the findings of the district judge as to the position, signals, and navigation of the respective vessels.   He saw and heard all the important witnesses, and was better able than we are to decide which were the more credible.   Indeed, as the testimony stands in the printed record, we think the weight of evidence supports the narrative of the Phonix in its essential particulars.   We find the testimony of the master of the tug Wadley especially persuasive, since he was following close behind the Gladiator, in a position where prudent navigation required him to watch her movements and those of the Phonix in order to regulate his own.   His attention was attracted, therefore, to both boats at the critical time when they first began to navigate with reference to each other.   We concur in the conclusion that:

"The situation and courses of the two vessels at that time were so far on the starboard of each other that they were not to be considered as meeting head and head, and it was the duty, therefore, of each to pass on the starboard side of the other."

The Phonix navigated in conformity to that obligation.   The Gladiator did not.

The decree is affirmed, with interest and costs.

NOTE.—The following is the opinion of Holt, District Judge.

HOLT, District Judge.   The evidence in this case is very conflicting.   My conclusion is, however, that the proper time for the pilots of the Phönix and the Gladiator to decide what course to adopt to pass each other in safety was immediately after the ferryboat had passed before the Phönix.   In my opin-

ion, the situation and courses of the two vessels at that time were so far on the starboard of each other that they were not to be considered as meeting head and head, and it was the duty, therefore, of each to pass on the starboard side of the other. The testimony of the witnesses for the Phönix is that she gave two signals of two blasts each, to indicate that intention. The testimony of the witnesses for the Gladiator is that the vessels were in such a situation that the Gladiator had a right to pass port to port; that she sounded one whistle, and received no answer, and then another, and still received no answer, and that she meanwhile held her course and speed. Under these circumstances, I think that the Gladiator was in fault for attempting to pass port to port, and for not stopping and giving alarm whistles, if it is true that she received no reply to her one whistle signal. But her pilot admits that he heard a signal of two whistles, but asserts that he supposed that the signal was given to some ferryboats in the river. I think he had no right to make such an assumption; but if he did, the natural inference from such a signal would be that the Phönix would certainly not port her helm, but would probably either hold her course or starboard somewhat, to be sure to clear the ferryboats. The Phönix was bound for Pier 13, on the New York side of the East River. Her natural course, therefore, on an ebb tide after rounding the Battery, would be to go directly up towards Pier 13, on the New York side. I think the narrow channel rule has no application. It does not apply to vessels going from one part of a harbor to another. The Phönix could not be required, under the circumstances, to go over to the Brooklyn side of the river, and then return. Such a course would make it difficult for her to dock safely on an ebb tide. The Gladiator, if she had an adequate lookout, which, on the evidence, seems to me doubtful, ought not to have failed to perceive that the Phönix, after rounding the Battery, was turning in to the New York shore. There was plenty of room for the Gladiator to pass the Phönix on the latter's starboard side. Indeed, the collision occurred so near to the New York shore that it seems to me difficult to account for the action of the Gladiator in getting into the position in which she was at the time of the collision.

My conclusion is that the Gladiator was solely at fault for the collision. A decree may be entered accordingly.