## THE LA BRETAGNE.

### (Circuit Court of Appeals, Second Circuit. May 9, 1910.)

#### No. 165.

1. COLLISION (§ 91*)—NAVIGATION RULES—NARROW CHANNEL RULE—APPLI-
CATION TO NEW YORK BAY.

While the narrow channel rule (Act June 7, 1897, c. 4, art. 25, 30 Stat.
101 [U. S. Comp. St. 1901, p. 2883]), requiring vessels to keep to the right
in narrow channels, does not apply to upper New York Bay, considered as
a single body of water, it does apply to each of the well-recognized deep
water channels which run in a generally parallel direction through the
bay, including Main Ship Channel.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 187; Dec. Dig.
§ 91.*]

2. COLLISION (§ 102*)—CONTRIBUTORY FAULT—VIOLATION OF RULES.

The fact alone that one of two vessels at the time of a collision was on
the wrong side of a channel in violation of the narrow channel rule, will
not constitute a contributory fault where the collision occurred in the
daytime on a clear day through the direct fault in navigation of the other
vessel with nothing to obstruct her actions.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 102.*]

Appeal from the District Court of the United States for the South-
ern District of New York.

In Admiralty. Suit by the Baltimore & Ohio Railroad Company
against the steamship La Bretagne, La Campagnie Générale Transat-
lantique, claimant. Decree for libelant (148 Fed. 477) for half dam-
ages, and libelant appeals. Reversed.

This cause comes here upon appeal from a decree of the District
Court, Southern district of New York, awarding half damages to the
libelant in respect of injuries received by its car float B. & O. No. 160
N. in consequence of a collision with the S. S. La Bretagne near Lib-
erty Island, New York harbor. The car float was in tow of the steam
tug Narragansett. The District Court held both steam vessels in
fault, but because the tug and tow were both owned by libelant
awarded half damages only. The opinion of the District Judge will
be found in 148 Fed. 477, where the testimony is quite fully rehearsed.

Wallace, Butler & Brown (F. M. Brown, of counsel), for libelant.

Joseph P. Nolan (John M. Nolan, of counsel), for claimant.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. La Bretagne was coming down the
Main Ship Channel bound for sea; the Narragansett with a car float
on each side of her was proceeding up the same channel on a trip from
St. George, Staten Island, to pier 32, North river. We concur in the
conclusion of the District Judge that when navigation relative to each
other began each vessel had the other on her starboard bow; that they
were in a position to pass safely starboard to starboard, and that the
Bretagne was in fault for undertaking to go to starboard and thus pass
to the westward of the Narragansett, crossing the latter's bow in so

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

doing, instead of passing between the Narragansett and the Tice which was nearly 1,000 feet further to the eastward. The Narragansett was held in fault for violation of the narrow channel rule, and her counsel argues that this was error, contending that the place in question, being in the upper bay of New York, was not a narrow channel.

In The Bee, 138 Fed. 303, 70 C. C. A. 593, we were called upon to express an opinion on the proposition that the entire upper bay of New York was to be considered a narrow channel within rule 25 (Act June 7, 1897, c. 4, art. 25, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]). If any such construction were adopted, an outward bound vessel navigating Bay Ridge Channel, and keeping carefully to the starboard side of mid-channel, might nevertheless be held in fault because she was not 2 or 3 miles further to the westward on the starboard side of the median line of the entire body of water. We did not accept such proposition, but held that:

"In the case of a bay, which is also a port or harbor, the entire body of navigable water is not to be considered a single narrow channel within rule 25, where through such bay there have been designated a plurality of channels (i. e., more than one channel) running substantially parallel with each other and in the same general direction as the main flow of the tide or current."

In thus restricting our decision to the precise question before us, we did not hold that rule 25 would not apply to the designated channels which run through such a bay; on the contrary, we called attention to our former decision in The Sea King, 114 Fed. 535, 52 C. C. A. 349, where we held that rule 25 applied in the lower bay to a vessel navigating in the "Main Ship Channel," and said that the same rule would apply if she had been navigating in the Swash Channel or the East Channel. In The Benjamin Franklin, 145 Fed. 14, 76 C. C. A. 43, we held that the rule applied to the Hudson river between shores at Yonkers; again calling attention to the fact that elsewhere in the river there might be found two or more deep-water channels, running generally in the direction of the river's course, and separated by shoaler reaches of water. In The Islander, 152 Fed. 385, 81 C. C. A. 511, we held that the rule did not apply to the same river from Twenty-Third street to the Upper Bay; and in The No. 4, 161 Fed. 850, 88 C. C. A. 665, that it did not apply to the same river between Twenty-Ninth and Forty-Second streets.

Examination of these opinions will show that while holding that the rule does not apply to the waters of the upper bay or of the lower, considered each as a single body of water, it does apply to the well-recognized channels which are familiar to navigators in those bays. To the Swash, the Main Ship, the East, the Bay Ridge, and the Red Hook Channels we have already indicated that the rule applies. We see no reason for differentiating the Main Ship Channel which runs from the mouths of the two rivers, between Governor's Island on the east and Ellis and Liberty Islands on the west, across the Upper Bay to the Narrows. It is a well-known channel, charted and buoyed, and a steam vessel navigating it should follow the rule which requires her "when it is safe and practicable" to keep to that side of the fairway or mid-channel which lies on her starboard side. The circumstance

that there is a great deal of cross-travel in the upper bay itself does not seem a sufficient reason for abrogating the wholesome rule that vessels moving up or down some designated channel therein shall keep to the starboard side of it. Rule 25 is not to be construed as prohibiting vessels from crossing such channel at any convenient angle whenever the exigencies of their own navigation make it necessary or desirable for them to proceed from one to the other side of such channel; but when no such exigency exists they should keep to the proper side of the channel. We find the Narragansett in fault for navigating up the Main Ship Channel on the port side of mid-channel.

The only question remaining is whether this was a contributing fault. In The Benjamin Franklin, 145 Fed. 14, 76 C. C. A. 43, we said:

"The appellant contends further that, even if the Mead was in a part of the channel which was forbidden to her, her position was not the proximate cause of the collision, citing The Fanita, 8 Ben. 17 [Fed. Cas. No. 4,635]; The Maryland [D. C.] 19 Fed. 551; The E. A. Packer [D. C.] 20 Fed. 327; The Clara, 55 Fed. 1023 [5 C. C. A. 390]. Mere presence at the place of collision is not always enough to charge a vessel with fault, her presence must in some way contribute to the happening of the collision, as, for example, when a vessel in forbidden water has been concealed by fog or by some other vessel, and suddenly appears where she was not to be expected; or where the forbidden water is so restricted or already so incumbered with other craft that her presence embarrasses the navigation of the other vessel."

In The Clara and Reliance, 55 Fed. 1021, 5 C. C. A. 390, we said:

"Although the Clara was improperly beyond mid-river, she was not so near the shore as to embarrass the Reliance in rounding the Hook if the latter had been properly navigated. We do not overlook the rule that it is to be presumed against a vessel, which at the time of a collision is in violation of a statutory regulation intended to prevent collisions, that her fault was at least a contributing cause of the disaster, and that the burden rests upon her of showing not merely that it probably was not one of the causes, but that, under the circumstances, it unquestionably was not. * * * But the mere fact that the vessel is on the wrong side of the river does not make her liable if there was ample time and space for the vessels to avoid each other by the use of ordinary care. In such cases the cause of the collision is deemed not the simple presence of the vessel in one part of the river, rather than in another part, but the bad navigation of the vessel that, having ample time and space, might easily have avoided the collision, but did not do so."

And we relieved the Clara.

In the case at bar the collision took place between 10 and 11 a. m. on a bright clear day; no fog, nor any other vessel, nor any obstruction concealed the presence of the Narragansett. Both vessels saw each other in ample time. There were other craft in the channel, but not so many or so situated as to embarrass La Bretagne, which had abundant space to pass without difficulty between the Tice and the Narragansett. We are satisfied from the proofs that the presence of the Narragansett on the wrong side of the channel did not contribute to the collision. The case is closely parallel in that respect to that of the Clara and Reliance.

The decree is reversed, with costs to libelant, and cause remanded, with instructions to enter a decree for full damages against La Bretagne.