## THE SIF.

(Circuit Court of Appeals, Second Circuit. April 14, 1920. On Motion to Modify Decree, May 12, 1920.)

No. 193.

**1. Collision ☞95(1)—Concurring faults of steamship and meeting tug and tow.**

A collision at night in Bay Ridge Channel between a steamship passing out and a tow of seven coal barges, six of them in two tiers, passing up, *held* due to faults of the steamship, the tug, and the outside barges of the tow; the steamship being in fault for attempting to pass, as she thought between tows too close together for safety, the tug for being on the wrong side of the narrow channel, and both tug and the outside boats in the tow for failure to carry on such boats the lights required by the rules.

**2. Collision ☞151—Recovery limited to vessels against which claims are asserted.**

In a suit for collision by the boats comprising a tow against a meeting steamship and the towing tug, where no claim was made against the outside boats of the tow, and they were not brought in under the fifty-ninth rule (29 Sup. Ct. xlvii), there can be no recovery against them, although in fault, for injury to the inside boats.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit for collision by Charles E. McWilliams and others against the steamship Sif, with the tugs Coleraine and Nellie Tracy impleaded. Decree holding the Sif alone in fault, and the claimant appeals. Reversed.

For opinion below, see 244 Fed. 261.

Haight, Sandford, Smith & Griffin, of New York City (John W. Griffin, of New York City, of counsel), for appellant.

Wm. C. Foster, of New York City, for appellee McWilliams.

Foley & Martin, of New York City (George V. A. McCloskey, of New York City, of counsel), for appellees the Coleraine and others.

Carpenter & Park, of New York City, for appellee Wilson.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellees McCollum and others.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. February 3, 1915, at about 6:20 p. m. the Norwegian steamer Sif coming down the west side of the Bay Ridge channel about slack water flood was in collision with the tow of the Coleraine coming up on the same side. The Coleraine had a hawser tow of seven boats, mostly coal laden, made up from port to starboard as follows:

| | | |
|---|---|---|
| Hudson | J. J. McAllister | M. Aldrich |
| M. S. Kirby | Grace and Edith | W. No. 40 |
| | Arthur H. | |

The tug Nellie Tracy brought W. No. 40 into the tow after it had started and kept alongside under one bell, without taking any part

in the towing, so as to be in readiness to take the W. No. 40, Grace and Edith, and Arthur H. out of the tow and up the East River; the Coleraine, with the rest of the tow, being destined up the North River. The hawsers of the Coleraine were at least 250 feet long; the port hawser being on the Hudson, the port boat in the first tier, and the starboard hawser on the McAllister, the middle boat of the first tier.

The owners of the boats filed libels in rem against the steamer Sif, which brought in the tugs Coleraine and Nellie Tracy under the fifty-ninth rule (29 Sup. Ct. xlvii); the claimant of the Coleraine petitioning to limit his liability. All the causes were consolidated and tried together as one case. The District Judge found the Sif solely at fault.

There can be no doubt that the pilot and master of the Sif on the bridge were searching for lights on the boats in tow and that they did not discover any until the collision was imminent. Their story is that they saw a little on the starboard bow a green light and towing lights, and further astern, but nearly ahead, a red light and towing lights. They thought they were meeting two tows; the one showing the red light being astern of the one showing the green. Therefore they blew a signal of one whistle to the tug showing a red light and ported slightly, with the intention of passing between the tows. Instead of this, the steamer ran into and sank two of the boats in the first tier on the starboard side, viz. the Aldrich and the McAllister, and damaged more or less the other boats in the tow.

Another tug, the Walter Tracy, with a light tow, had crossed the Bay lower down and turned up the easterly side of Bay Ridge channel which must have been showing a red light and towing lights all the time. The trial judge concluded that those on the Sif saw the red light of the Walter Tracy and the green light of the Nellie Tracy, not seeing the green light and towing lights of the Coleraine until after they had blown a signal of one whistle and ported. Receiving no answer, they then slowed and reversed the engines, thereby throwing her bow still more to starboard, and blew a signal of three blasts.

It is difficult to believe that, if the red light which the Sif saw was that of the Walter Tracy well on her port bow, she would have blown a signal of one whistle and ported directly into a tow showing a green light and towing lights close aboard on her starboard bow. Moreover, the pilot who was in charge of the navigation testified that he saw the red light of the Walter Tracy as she crossed well astern of the Coleraine's tow. The master of the steamer confirmed this testimony when examined in Norway under a commission at a time when nothing had been said in the case about the Walter Tracy. On cross-examination he answered that after the collision the pilot had told him that another tow showing a red light and towing lights had crossed astern of the Coleraine's tow and passed up the Bay Ridge channel between the Sif and the Brooklyn shore, although he himself had not seen these lights.

We find the steamer at fault on her own story, without reference to the District Judge's explanation of the collision. The distance of the green light of the Coleraine to the red light of the Nellie Tracy could not have been much over 50 feet, and it was clearly reckless to

propose to pass between tows so near together, even if one was astern of the other. In addition to this, the steamer's first officer should have stood at the bow with a lookout in addition. Instead of this he was keeping the lookout alone, and went below without reporting to the bridge after he saw the red light, calling the carpenter, who was standing at the windlass 40 to 50 feet abaft the bow, to be in readiness to let an anchor go, to act as lookout in his place. When the first officer returned to the lookout, the collision was imminent. The District Judge, though finding such conduct reprehensible, did not think it contributed to the collision. But we cannot say it could not have contributed.

[1] Coming to the navigation of the tugs, the Coleraine was at fault for not requiring the outside boats to carry lights in accordance with law, and of course those boats themselves were also at fault for not doing so. The rules of the steamboat inspection service of the Department of Commerce, issued under authority of the Act of June 7, 1897, § 2, as amended by Act of May 25, 1914 (Comp. St. § 7906), provide:

"Barges and canal boats, when being towed by steam vessels on the waters of the Hudson river and its tributaries from Troy to the boundary lines of New York Harbor off Sandy Hook, as defined pursuant to section 2 of the act of Congress of February 19, 1895, the East River, and Long Island Sound (and the waters entering thereon, and to the Atlantic Ocean), to and including Narragansett Bay, R. I., and tributaries, and Lake Champlain, shall carry lights as follows:          )

\*          \*          \*          \*          \*          \*          \*          \*          \*          \*

"Barges and canal boats, when towed at a hawser two or more abreast, when in one tier, shall carry a white light on the bow and a white light on the stern of each of the outside boats; when in more than one tier, each of the outside boats shall carry a white light on its bow; and the outside boats in the last tier shall each carry, in addition, a white light on the outer afterpart of the stern.

\*          \*          \*          \*          \*          \*          \*          \*          \*          \*

"When barges or canal boats are massed in tiers and towed at a hawser, as is usual on the Hudson river, there shall be carried on the forward port side of the port boat of each tier a white light, and on the forward starboard side of the starboard boat in each tier a white light, and on the after port side of the port boat in the stern tier a white light, and on the after starboard side of the starboard boat in the stern tier a white light.

"The white bow lights for barges and canal boats referred to in the preceding rules shall be carried at least ten feet and not more than thirty feet abaft the stem or extreme forward end of the vessel. On barges and canal boats required to carry a white bow light, the white light on bow and the white light on stern shall each be so placed above the hull or deck house as to show an unbroken light all around the horizon, and of such a character as to be visible on a dark night with a clear atmosphere at a distance of at least five miles."

Lights so placed define exactly the size and shape of the tow. Each boat is said to have carried an ordinary hand lantern at the stern, but bow lights were not carried, and there was no proof that those ordinary hand lanterns had a range of five miles. The District Judge inferred, from the fact that the towing lights were discerned with great difficulty, that the weather conditions were unfavorable. This is no excuse for not displaying the kind of lights which and at the places where the rules require. Who can say that proper lights in proper places could not have sooner advised the Sif of the real situation? To be an excuse the proof must go as far as this. The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148. So who can say that under such circum-

stances navigating on the wrong side of the Bay Ridge channel, which is a narrow channel under article 25 of the Inland Regulations (Comp. St. § 7864)—La Bretagne, 179 Fed. 286, 102 C. C. A. 651—could not have contributed to the collision?

[2] Without going into a consideration of the contradictory estimates of time and distance, we feel satisfied that the steamer Sif, the tug Coleraine, and the outside boats themselves were all at fault. The court below is directed to enter a decree in favor of the libelants, owners of the inside boats, for their full damage, with interest and costs against the steamer Sif and the tug Coleraine; the damages of the owners of the outside boats who were themselves at fault to be borne equally by the boat, the steamer Sif, and the tug Coleraine. The Eugene F. Moran, 212 U. S. 466, 29 Sup. Ct. 339, 53 L. Ed. 600. The owners of the inside boats having made no claim against the outside boats, there need be no consideration of what rights, if any, they have against them.

The petition of the claimant of the Coleraine to limit his liability is granted, and the petition against the Nellie Tracy is dismissed, without costs.

Decree reversed.

On Motion to Modify Form of Decree to be Entered Below.

PER CURIAM. We remain of the opinion that in these cases, the owners of the inside boats having made no claim against the outside boats and the outside boats not having been brought in under the fifty-ninth rule, no recovery can be had against them directly by the owners of the inside boats, or by the owners of the Coleraine and Sif, on the ground of contribution to the amount paid by them to the owners of the inside boats.

The motion is denied.