## THE AMOLCO.

(District Court, D. Massachusetts. June 16, 1921.)

No. 1851.

Collision ☞91—Steam vessels meeting.

A collision in the daytime in lower New York Bay between a steam trawler passing out and a steamship coming in *held*, on the evidence, due solely to the fault of the trawler in taking a diagonal course, which carried her into the east side of the channel and across the course of the steamship, which properly kept to that side, and persisting in such course after signals of the steamship for passing port to port.

In Admiralty. Suit for collision by Louis H. Green against the steamship Amolco. Decree for respondent.

Harrington, Bigham & Englar and T. Catesby Jones, all of New York City, for libelant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

MORTON, District Judge. This is a case of collision between the steam trawler Heroine and the steamship Amolco. The collision occurred in Lower New York Harbor about noon on April 23, 1920. It was a clear day with a light breeze. The Heroine was outward bound. Her general course is not greatly in dispute. From a point near the buoy at the entrance to the Pennsylvania Terminal she headed for buoy 12 (also called "12½"). This course took her on a long slant across the channel from starboard to port. She sighted the Amolco when the vessels were a mile or more apart, and kept the same course until she reversed her engines just before the collision.

The Amolco was coming in from sea and made the turn in the channel at buoy 12. The testimony of Capt. Bonia, of the trawler, places the steamer wide off the buoy when making the turn, well over on her port side of the channel, and proceeding from that position on a course that would have carried her into the anchorage ground on that side.

There is no reason why the steamer should have been in such a position or taken such a course; she was destined to a dock on the east shore. She would naturally make the turn near buoy 12, which was on her starboard hand, and hold that side up the channel; and the evidence is overwhelming that that is what she did. Her master and other witnesses testify that she left the buoy about her own length to starboard; and in this they are corroborated by Capt. Fitzsimmons of a tug which was following the Amolco. Capt. Fitzsimmons testifies that, after having made the turn as above described, the steamer proceeded up her starboard side of the channel about her own length (317 feet) from the line of the buoys. Capt. Hillyer, of the Amolco, testifies that his course took him just outside of buoy 14, which comes to about the same thing as Capt. Fitzsimmons' testimony. The compass course, as given by Capt. Hillyer, and the steamer's helmsman (Cummings), slants out into the channel. But as the steamer was undoubtedly being navigated with reference to the buoys rather than the compass, Capt. Hillyer's statement of her course with reference to them, corroborated as it is by Capt. Fitzsimmons, seems to me more likely to be right than the compass course which he gives. The difference is slight, not over three-quarters of a point. The testimony of Cummings tends to show that she made a somewhat wider turn at buoy 12. But it seems certain that she never got over the center line of the channel, and, after making the turn, proceeded up her starboard side of it. I find accordingly.

The determination of the Amolco's position when passing buoy 12 and her course thereafter is practically decisive against the Heroine's essential contention, viz. that the Amolco, from a position near the center or on her port side of the channel at buoy 12, was proceeding on a slant towards the west (her port) side, and that the vessels would have passed safely starboard to starboard but for the "Amolco's" subsequent change of course. The courses actually taken were intersecting, although at a very small angle; the trawler crossing the bow of the steamer from port to starboard.

In that situation it was the trawler's duty to give way, and the steamer's to hold her course and speed; or, if the vessels be regarded as head on under the rules, as the libelant contends, it was the duty of each to turn to starboard and pass port to port. The channel in question has been held by the Court of Appeals for the Second Circuit to be a narrow channel, within article 25, being Comp. St. § 7899 (The La Bretagne, 179 Fed. 286, 102 C. C. A. 651), and it was the further duty of the Heroine to keep her starboard side of it. She therefore held a course which was wrong, because it crossed the bow of the other vessel —or, if the positions be regarded as head on, because she did not turn to starboard—and because it carried her over to her wrong side of the channel into the path of a vessel rightfully proceeding there. The City

of Norfolk (D. C.) 248 Fed. 780; Hayne, "Rule of the Road at Sea" (2d Ed.) pp. 71, 72.

There is dispute as to the signals. The Amolco's testimony is that she signaled first with a single blast, which the Heroine answered by two blasts—i. e., she cross-signaled; that the steamer repeated her single signal, and was again cross-signaled by the trawler; that danger signals and reverse signals followed from both vessels. The Heroine's testimony is that she gave the first signal, two blasts; that the Amolco cross-signaled, by answering with a single blast; and that very shortly the danger and backing signals were given. Whether the Amolco first announced her intention of holding her starboard side of the channel, or whether she first did so in answer to the signal of the Heroine, which was endeavoring to crowd her out, seems to me not important. The Amolco seasonably discovered the Heroine, and seasonably indicated her intention to adhere to her privilege, if she had the other vessel on her port bow, or her duty, if they were head on, to turn to starboard and to hold her own side of the channel, and it was the Heroine's duty to give way or do likewise. Inasmuch as the Heroine was violating two important rules of navigation, and as I have found that the testimony of her master is on one important point, viz. the position of the Amolco with reference to buoy 12, erroneous, I am disposed to accept the testimony of the Amolco as to signals, rather than that of the Heroine; and I so find. The likelihood that a vessel clearly at fault in a collision will make unfounded charges against the navigation of the other vessel has been often recognized by courts of admiralty.

It does not seem to me that the Amolco was at fault for continuing to turn to starboard after receiving the second two-blast signal from the Heroine. The movement carried her away from the other vessel and still farther onto her own side of the channel. It gave the other vessel more room in which to maneuver and to perform her statutory duty under articles 18 and 19 (Comp. St. §§ 7892, 7893) of avoiding the threatened collision by turning to starboard. Capt. Hillyer was certainly not bound to anticipate that the other vessel would not give way and would hold her wrongful course into collision.

The bottom facts of the case are, I think, that the trawler, whose crew were thoroughly accustomed to New York harbor, was cutting to sea by the shortest line; that, relying on her speed and ability to maneuver quickly, her master anticipated no trouble in avoiding this slow-moving cargo steamer, and planned to cross the channel ahead of her. Feeling confident he could do so, he kept on, even after the steamer's one-blast signal had notified him that she was turning to starboard; and his miscalculation resulted in the collision.

Decree dismissing libel, with costs.