### THE PETER RINELLI.

### THE LLOYD H. DALZELL.

(Circuit Court of Appeals, Second Circuit. April 24, 1922.)

#### Nos. 276, 277.

Collision ⬥91—Evidence held to prove one vessel at fault for collision in river.

In cross-libel for damages sustained in collision between a vessel which had passed out of the gap at Atlantic Basin and other vessel which had left pier at Brooklyn bound for such gap, after each vessel had turned out into the river, in which it was claimed in behalf of the first vessel that the vessels were in a position to pass port to port, and that first

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vessel blew one whistle, and it was claimed in behalf of the second vessel that the vessels were in a position to pass starboard to starboard, and that such vessel blew a signal of two whistles, evidence *held* to show that the vessels could have passed starboard to starboard and that the collision was the fault of the first vessel.

Appeals from the District Court of the United States for the Eastern District of New York.

Cross-libels in admiralty by Joseph H. Wells and others against the steam lighter Peter Rinelli, Peter Rinelli and another, claimants, and by Peter Rinelli and another against the steam tug Lloyd H. Dalzell, Joseph H. Wells and others, claimants. Decree for libelants Joseph H. Wells and others against the steam lighter Peter Rinelli, and dismissing the libel of Peter Rinelli and another against the steam tug Lloyd H. Dalzell, and libelants Peter Rinelli and another appeal. Affirmed.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellants.

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. On the afternoon of December 19, 1919, the Rinelli passed out of the Gap at Atlantic Basin shortly before 5 o'clock, bound for Gowanus. At the same time the tug Dalzell left Pier 45, Brooklyn, bound for the same Gap that the Rinelli left. A collision occurred between the tug and the steam lighter at a point the location of which is in dispute. Each vessel turned out into the river when the stem of the Dalzell struck the port side of the Rinelli amidships. About 10 minutes later the Dalzell sank. The tide was flood. It was snowing slightly. Sunset occurred at about 4:30. The appellants' claim is that the Rinelli was further out and the Dalzell close to the Brooklyn shore, so that the vessels were in a position to pass port to port; that the Rinelli blew one whistle, but the Dalzell cross-signaled with two whistles, and thereupon the Rinelli blew another one-whistle signal, and that after the helm of the Rinelli was put to port her bow continued to swing somewhat to starboard in the flood tide, and the Dalzell struck the Rinelli, at about right angles, amidships.

The appellees' claim is that the vessels were in a position to pass starboard to starboard, and that the Dalzell blew a signal of two whistles; the Rinelli blew a signal of one whistle and ported across the course of the Dalzell, which hooked up, reversed her engines, and blew three whistles; that the Dalzell, having the tide with her, and the Rinelli, continuing at full speed, came together, the Dalzell's stem coming in contact with the Rinelli's port side. The relative position of the vessels was sharply contested. The District Judge, who heard and saw the witnesses, determined that the Dalzell was out in the river in a position to pass starboard to starboard. The masters of both colliding vessels agreed that the tide was strong flood, with the Dalzell going with the tide, hooked up, and it was probable that she took advantage of the strong flood tide to navigate with it further out into the river as claimed. The tide close to the pier ends was not strong, and it was therefore

easier for the Rinelli to proceed near to the Brooklyn shore, since she was navigating against the tide. When the Rinelli came out of the Atlantic Basin Gap, she headed south without taking the starboard side of the fairway, and it is very likely that she was, as claimed, navigating close to the Brooklyn shore.

It is established that, as the Dalzell came up Buttermilk Channel, an overtaking tug, the Alice Drew, came up about 200 feet astern of her. She was so close astern that the Drew stopped when her navigator heard the cross signals. The testimony of her master was that the Rinelli navigated about 150 feet off the Brooklyn piers and that the Dalzell was further out and directly ahead of the Drew. He testified that the colliding vessels were navigating on courses which required a starboard to starboard passage. The testimony of this disinterested witness bears great weight. He was placed in a position which permitted him to, and, indeed, it was necessary for him to, observe the Rinelli and Dalzell. Such testimony is persuasive. The Phonix, 154 Fed. 474, 83 C. C. A. 332. It also appears that the appellants' answer to the libel of the appellees charges fault in not passing the Rinelli port to port, and the master of the Rinelli testified that it was about 250 feet off or about one-third of the distance out. It thus appears that the appellants' claim was that the Rinelli and Dalzell were meeting vessels, and that when they began to navigate with reference to each other the Rinelli was further out and had the Dalzell on her port bow, so that the vessels were in the position requiring them to pass port to port.

On this appeal, however, it is argued that the starboard hand rule applied, and that the vessels were on crossing courses, although the question of port to port passage is discussed in the briefs. These positions are inconsistent. The vessels came together about 300 feet off the lower end of Pier 38, the bow of the Dalzell colliding with the Rinelli's port side about amidships. At the time of the collision, the Rinelli was heading toward the lower end of Governor's Island. This demonstrates that prior to the collision, the Rinelli was nearer the Brooklyn piers than the Dalzell, and we think makes it evident that the Rinelli must have sheared across the Dalzell's course, or otherwise, had the Rinelli headed across stream from the time that the Rinelli and Dalzell first sighted each other, they would have been much further apart. With the Rinelli hooked up, she would probably have crossed the Dalzell's course to the starboard side of Buttermilk Channel before the risk of a collision would arise. It also appears that the Rinelli was on the wrong side of the channel.

In La Bretagne, 179 Fed. 287, 102 C. C. A. 652, this court said:

"Examination of these opinions will show that, while holding that the rule does not apply to the waters of the upper bay or of the lower, considered each as a single body of water, it does apply to the well-recognized channels which are familiar to navigators in those bays. To the Swash, the Main Ship, the East, the Bay Ridge, and the Red Hook Channels we have already indicated that the rule applies. We see no reason for differentiating the Main Ship channel, which runs from the mouths of the two rivers, between Governor's Island on the east and Ellis and Liberty Islands on the west, across the Upper Bay to the Narrows. It is a well-known channel, charted and buoyed, and a steam vessel navigating it should follow the rule which requires her, 'when

it is safe and practicable,' to keep to that side of the fairway or mid-channel which lies on her starboard side."

As these vessels were approaching each other, they exchanged signals before the collision. The Dalzell blew the first signal and each vessel observed the other. The question of lights is therefore immaterial. It was not failure to see the vessels which brought about the collision, but the imprudent navigation after observation.

Decree affirmed.