### ADAMS et al. v. THE PETER MORAN.

### THE WILLIAM J. MORAN, Inc.

### THE WINDING GULF.

United States District Court
S. D. New York.
Dec. 15, 1950.

Bingham, Dana & Gould, Boston, Mass., and Kirlin, Campbell, Hickox & Keating, New York City (Charles S. Bolster, Boston, Mass., and John F. Gerity, New York City, of counsel), for libelants.

Burlingham, Veeder, Clark & Hupper, New York City (Chauncey I. Clark, Ray Rood Allen and A. Howard Neely, all of New York City, of counsel), for claimant.

COXE, District Judge.

This is a libel in rem by the owners of the steam collier Winding Gulf against the tug Peter Moran. The collier was bound, loaded, from Hampton Roads to Boston, via Long Island Sound and the Cape Cod Canal. The tug was bound from the Canal to Baltimore, Maryland, towing, in tandem, two obsolete Canadian destroyers, the No. 1-93 and the No. 1-24 (also called the St. Francis), owned by the Boston Iron & Metal Company, of Baltimore, to be scrapped. The two destroyers were "dead" ships, being unmanned and without motive power.

At a little before ten o'clock in the evening of July 13, 1945, in a fog in the open waters off Buzzard's Bay, Massachusetts, the Winding Gulf collided with the St. Francis, the last one of the two destroyers in the tow. The destroyer sank and became a total loss, and the Winding Gulf sustained considerable damage.

On November 14, 1945, a libel was filed in the United States District Court for Maryland, by the Boston Company, as owner of the St. Francis, against the Winding Gulf and the present libelants, as her owners, to recover for the loss of the destroyer. The present libelants filed a cross-libel against the Boston Company to recover the damages to the Winding Gulf. Jurisdiction in that proceeding could not be obtained over the tug Peter Moran or Tug William J. Moran, Inc., its owner, and although the present libelants requested the owner to appear and submit to the jurisdiction of that court, so that all parties might be before it, it refused to do so. The libel and cross-libel were tried in May 1947 before Judge Chesnut, who held the Winding Gulf and the St. Francis both at fault, and that the damages should be equally divided. The St. Francis, D.C., 72 F.Supp. 50.

On July 23, 1946 the present libel was filed by the owners of the Winding Gulf against the tug Peter Moran in which it is sought to recover the damages to the Winding Gulf, which, it is alleged, were caused solely by the fault and negligence of the tug, and any amount which the Boston Company might recover against the "Winding Gulf" in the Maryland suit. The case has been heard upon the deposition of Ira F. George, the master of the tug, taken in the trial of the Maryland suit, and a stipulation that the facts with reference to the collision are as found by Judge Chesnut in his opinion; that the towage was being performed under a contract between Foundation Maritime Limited and the Boston Company, to which the present libelants were not parties, and that the services of the "Peter Moran" were furnished under this contract for that portion of the towage from the Cape Cod Canal to Baltimore.

The contract provided that Foundation would supply a tug for the towage of the two destroyers as a double tow, that is, in tow of the one tug, from Sydney, Nova Scotia, to Baltimore, Maryland, with the privilege of engaging an American towing company to supply tug service for part of the voyage in American waters, and that the services of any tug should be considered as supplied under the terms and conditions of what was entitled "Standard Towing Conditions as agreed between the Shipping Federation of Canada and Eastern Canadian Tug-Boat Owners' Association". The pertinent portions of these conditions are the following:

"Tug services will be supplied upon the condition that all towing, moving, shifting, docking, undocking or other handling of a vessel or craft of any character by a tug or tugs owned or employed by the Tug Company is done at the sole risk of such vessel or craft and of the owners, charterers or operators thereof, and that the Master and crew of such tug or tugs used in the said service become the servants of and identified with such vessel or craft and

522

their owners, and that the Tug Company only undertakes to provide motive power.

"The Tug Company will not be responsible for the acts or defaults of the Master, or crew of such tug or tugs, or any of their servants or agents or else whosoever, nor for any damages, injuries, losses or delays from whatsoever cause arising that may occur either to such vessel or craft, or property or persons on board thereof, or to any other ship or vessel or property of any kind whether fixed or movable and the Company shall be held harmless and indemnified by the Hirer against all such damages, injuries, losses and delays, and against all claims in respect thereof."

Judge Chesnut held that the Winding Gulf was at fault in not changing her course or speed after she had heard the tug's fog signals, seen her lights, and knew she had a tow; that the St. Francis was also at fault in that her lights were inadequate and insufficient, and in that she had no crew on board; and that the faults of both contributed to the collision. He also held that the provisions of the towage contract legally resulted in making the faults with respect to the lights and absence of crew on the St. Francis directly attributable to the Boston Company, her owner, because they constituted faults by the master of the tug, who, by the terms of the contract, became in this respect the servant of the Boston Company.

The tug contends that the faults of the tug's personnel having been thus imputed to the Boston Company, the decision of Judge Chesnut is *res judicata*; that, therefore, the present libelants are estopped from asserting that the tug is also liable; and that to permit recovery would result in the libelants recovering twice in respect of the same tort, for they have already been allowed a recovery in the Maryland suit for the very same faults on the part of the tug's personnel that are now asserted as the basis of recovery.

■ These contentions cannot be sustained. Both the "St. Francis" and the tug must be considered as independent vessels, each one liable for its own faults.

The W. G. Mason, 2 Cir., 142 F. 913, 918: The Eugene F. Moran, 212 U.S. 466, 475, 29 S.Ct. 339, 53 L.Ed. 600. The absence of proper lights and of a crew on the "St. Francis" constituted, under the circumstances shown, faults of both vessels. The Sif, 2 Cir., 266 F. 166; The Socony No. 123, D.C.S.D.N.Y., 10 F.Supp. 341, modified on other grounds, 2 Cir., 78 F.2d 536. Both vessels are therefore liable for these faults. They were both tort feasors, and the owners of the Winding Gulf may recover judgment against either or both for their full damages, subject, of course, to the condition that they can collect only once. Sturgis v. Boyer, 24 How. 110, 16 L.Ed. 591; The Beaconsfield, 158 U.S. 303, 15 S.Ct. 860, 39 L.Ed. 993.

That Judge Chesnut held the Boston Company liable because of the negligence of the master of the tug, which he imputed to the Boston Company by reason of the provision in the towage contract making the master of the tug the servant of that company, is immaterial.

■ The towage contract cannot affect in any way the liability of the tug to the Winding Gulf for the faults of the tug. It purported only to fix the relationship of the tug and the Boston Company as between themselves. The Winding Gulf was not a party to it. None of its provisions, therefore, bound the Winding Gulf or affected its right to recover from the tug. Publicker Industries, Inc., v. Tugboat Neptune Co., 3 Cir., 171 F.2d 48, 50; The Niels R. Finsen, D.C.S.D.N.Y., 52 F.2d 795, 798; Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, 261 N.Y. 455, 463, 185 N.E. 698.

The decree in the Maryland suit is, of course, *res adjudicata* as to what was actually litigated, or might have been litigated. But the liability of the tug could not be litigated there, for neither the tug nor its owner were parties to that suit. All that that decree could do was to determine the respective liabilities of the Winding Gulf and the St. Francis as to each other, leaving undetermined the respective liabilities of the Winding Gulf

and the tug as between themselves. As the Maryland court had no jurisdiction over the tug, its decree cannot operate as *res judicata* or as an estoppel, for the liability of the tug was not a matter which was material or essential to the issues there being tried.

Upon the present record, I find that the Winding Gulf was at fault in the respects found by Judge Chesnut; that the tug Peter Moran was also at fault in not seeing that the St. Francis was provided with adequate and sufficient lights, and in not providing a man on board to see that the lights were kept burning brightly, and to give fog signals, if necessary; and that the faults of both contributed to the collision.

Finally, as to the damages. If the owners of the Winding Gulf, the tug and the St. Francis had all been parties to the same suit, the total damages sustained by the Winding Gulf and the St. Francis would be divided equally among the owners of all three vessels, for all have been found equally at fault. The Eugene F. Moran, 212 U.S. 466, 473-475, 29 S.Ct. 339, 53 L.Ed. 600; The Kookaburra, 2 Cir., 69 F.2d 71, 72-73; The Socony No. 123, 2 Cir., 78 F.2d 536. Judge Chesnut held that the total damages sustained by the Winding Gulf and the St. Francis must be borne by their respective owners, equally. In this suit the damage to the Winding Gulf must be born equally by her owners and the owner of the tug. If, when the damages to both vessels are finally determined, this should result in the owners of the Winding Gulf recovering under both decrees more than two-thirds of the damages to the Winding Gulf, the result can be avoided by providing in the decree to be entered that they shall not collect from the owner of the tug a sum greater than the amount which, when added to the amount collected from the Boston Company under the Maryland decree, shall equal two-thirds of their damages.

There may be a decree in favor of the libelants in accordance with this opinion, together with costs.