**HORTON & HORTON, INC., Libelant, Appellant,**

**v.**

**THE S/S ROBERT E. HOPKINS, Etc., Tide Water Associated Oil Company, Inc., Claimant, Appellees.**

**No. 17562.**

United States Court of Appeals Fifth Circuit.

June 30, 1959.

Rehearing Denied Oct. 2, 1959.

---

Robert Eikel, Houston, Tex., for appellant.

Joseph Newton, Houston, Tex., Warner Pyne, New York City, Pyne, Brush, Smith & Michelsen, New York City, and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel. Sweeney J. Doehring, for appellees.

Before RIVES, CAMERON and JONES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from an interlocutory decree [1] in admiralty finding two vessels in a collision at fault and directing that the damages be divided.

The collision occurred in the Houston Ship Channel on December 12, 1955, at 11:30 P.M. The Channel is a narrow, busy one about 400 feet wide. The S/S Hopkins, an ocean-going tank vessel, was proceeding inland and the

1. As permitted by 28 U.S.C.A. § 1292.

Tug Maye was going south pushing a flotilla consisting of two empty barges end-to-end, the after barge being secured along the portside of the Tug. Shortly before the collision, a heavy, dense fog had set in and visibility was poor—it was zero at the time of the collision. The angle of impact showed that the 260-foot tug and tow were broadside in the 400-foot channel. The front barge, Barge No. 121, was sunk, and nearby Beacon No. 70 was damaged.[2]

The district court held that each vessel was substantially at fault and found specifically:

"I find that it is a clear case of mutual fault.

"There was fault on the part of the Hopkins in proceeding at an excessive rate of speed under the circumstances, in failing to navigate with caution, in failing to keep a proper lookout, and in failing to stop immediately upon hearing fog signals ahead of her after knowing the presence, but not the position, of vessels in the channel.

"The tug Maye and her tow were at fault in not knowing her position in the channel, in displaying improper lights in her tow, in violating the narrow channel rule, in failing to keep a proper lookout, and in failing to advise the Hopkins of her position with a searchlight.

"Each of the faults above set out that were committed by the respective parties was a major, gross, serious, substantial fault, and a decisive one that directly contributed to the collision in question."

The libelant, owner of the Tug Maye and Barge No. 121, appeals from this ruling, contending that gross negligence of the S/S Hopkins was the sole cause of the collision, and that faults of the Tug Maye and her tow did not contribute in any way to the collision. The appellee, owner of the S/S Hopkins, conceding that the evidence supports the finding of joint fault, cross-assigns errors contending that Barge No. 121, which was sunk in the collision, was unseaworthy because of an improper display of lights, that the Tug Maye was also at fault, and that, since three vessels were at fault, the libelant as owner of both the tug and the barge must bear a two-thirds share of the damage and can recover only one-third from the appellee.

After carefully studying the record, we are of the opinion that the trial court was not clearly erroneous[3] in its finding of mutual fault on the part of each vessel which contributed substantially to the collision. Indeed, there was such an abundance of evidence to support each finding made by the district court that we see no point in a detailed discussion of the testimony.

■ The district court allowed the cross-assignments of error to be filed without the filing of a notice of cross-appeal by appellees. Both this Circuit and other Circuits have sanctioned that practice growing out of the original conception of an appeal in admiralty as a trial *de novo* in which it is the appellate court's duty to review the whole case and enter such decree as is proper.[4] It may

2. The Government intervened and filed its claim for $1,800.00 for damage to Beacon No. 70, and both appellant and appellees stipulated that the costs of repair to the Beacon would be borne by the party or parties held liable.

3. See McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.

4. Pavlis v. Jackson, 5 Cir., 1942, 131 F. 2d 362, 363; Stevens v. United States Lines Co., 1 Cir., 1951, 187 F.2d 670, 673; Edmond Weil, Inc. v. American West Af-

rican Line, 2 Cir., 1945, 147 F.2d 363, 364.

In Construction Aggregates Co. v. Long Island R. Co., 2 Cir., 1939, 105 F.2d 1009, 1011, the lower court's decree held all three vessels liable in a collision and only the owners of one vessel appealed. The court stated that "the owners of the other two vessels filed assignments of error, and the case thus became in substance an appeal by all." See also 4 Benedict on Admiralty, 6th ed., §§ 556 and 571; compare The Stephen Morgan, 1876,

be noted also that in the present case the cross-assignments of error and the order of the court permitting them to be filed were dated only eleven days after the entry of the interlocutory decree, well within the time allowed for the filing of notice of appeal. See 28 U.S.C.A. § 2107. Further, the appellant does not object to our considering the cross-assignments of error, but to the contrary, upon oral argument, appellent's counsel, with commendable candor, recognized the practice as proper in admiralty cases. Under such circumstances, since we are dealing with a mere rule of practice not going to the *power* of the Court to review objections urged by the appellee,[5] we proceed to a consideration of the cross-assignments of error.

■ Appellees position, under its cross-assignments of error, is thus stated in brief:

"Since the improper display of lights on the Barge No. 121 resulted from the unseaworthiness of the barge as well as fault of the crew of the tug, the appellant, owner of both tug and barge, should bear two-thirds of the damages."

The district court found that "the Tug Maye *and her tow* were at fault

* * * in displaying improper lights in her tow * * *." (Italics supplied.) Barge No. 121 was within the class described as "barges, canal boats, scows and other nondescript vessels" under 33 C.F.R. § 80.16a(a), (c), (h), (j) [6] and was required by that regulation, when being propelled by a steam vessel on the starboard side, to display a red light on her port bow at least eight feet above the water so as to be visible from right ahead to two points abaft the beam (22½ degrees) on the portside and to be visible on a dark night with a clear atmosphere for at least three miles. Instead, the evidence shows that Barge No. 121 had only a white kerosene lantern near the port bow, about seven feet above the surface of the water and not visible abaft the beam. Since the S/S Hopkins hit Barge No. 121 near the stern on the portside at nearly right angles, the evidence indicates that this light could not have been seen by the S/S Hopkins, but that a proper light placed in accordance with the regulations might possibly have been seen.

Appellant says that, since the S/S Hopkins' pilot testified that he saw no lights on any vessels and since it is undisputed that visibility was zero or close

---

94 U.S. 599, 24 L.Ed. 266; Langnes v. Green, 1931, 282 U.S. 531, 538, 51 S.Ct. 243, 75 L.Ed. 520.

**5.** Langnes v. Green cited in footnote 4, supra.

**6.** "§ 80.16a *Lights for barges, canal boats, scows and other nondescript vessels on certain inland waters on the Gulf Coast and the Gulf Intracoastal Waterway.*

"(a) On the Gulf Intracoastal Waterway and on other inland waters connected therewith or with the Gulf of Mexico from the Rio Grande, Texas, to Cape Sable (East Cape), Florida, barges, canal boats, scows, and other vessels of nondescript type not otherwise provided for, when being towed by steam vessels shall carry lights as set forth in this section.

　* 　* 　* 　* 　* 　* 　*

"(c) When being towed alongside a steam vessel on the starboard side, a barge, canal boat, scow, or other vessel

of nondescript type not otherwise provided for shall have a green light on the starboard bow, and when being towed alongside on the port side, a red light on the port bow.

　* 　* 　* 　* 　* 　* 　*

"(h) The colored side lights described in this section must be fitted with inboard screens so as to prevent them from being seen more than half a point across the bow, of such a character as to be visible on a dark night with a clear atmosphere at a distance of at least three miles, so constructed as to show a uniform and unbroken light over an arc of the horizon of ten points of the compass, and so fixed as to throw the light from right ahead to two points abaft the beam on either side.

　* 　* 　* 　* 　* 　* 　*

"(j) All lights described in this section shall be carried at least eight feet above the surface of the water and at approximately the same height * * *."

to zero, the color and location of the lights could not have contributed to cause the collision and there is no reasonable basis in the evidence to so conclude. There is an absence of proof to support that position. Appellant adduced no evidence as to the power of the white kerosene lantern, as to the visibility of a regulation red light under the circumstances, as to the power of the fixed lights, if any, on the Tug J. T. Stillman and her tow which were in nearby proximity to the accident, or as to the lighting of the Tug Maye.[7]

■ Since the appellees established the statutory fault of improper lighting on Barge No. 121, it was the appellant's burden to prove that such improper lighting could not have contributed to the collision.[8] This burden the appellant failed to carry.

We hold, therefore, that the collision between the barge and the steamship was due (a) to the fault of the S/S Hopkins in the ways listed by the district court, (b) to the fault of the Tug Maye in the ways listed by the district court, and (c) to the separate fault of the Barge No. 121 in being improperly lighted. Since the three vessels were separately at fault, and since the barge and tug were the property of appellant, only one-third of the damage is attributed to the appellees.[9] Therefore, the total damage—to the Barge No. 121 and to the Beacon No. 70—together with interest and cost in the lower court will be borne one-third by appellees and two-thirds by appellant. The cost of this appeal is taxed against the appellant, and the interlocutory decree is

Modified and affirmed.

7. Even had the Tug Maye been carrying lawful side lights, they were required to be visible for only two miles. 33 U.S.C. A. § 172 (b) (c).

8. The Pennsylvania, 1873, 19 Wall. 125, 136, 22 L.Ed. 148.

9. The Eugene F. Moran, 1909, 212 U.S. 466, 475, 29 S.Ct. 339, 53 L.Ed. 600;

Moran Towing & Transp. Co., Inc. v. Empresa Hondurena de Vapores, 5 Cir., 1952, 194 F.2d 629, 632; United States v. S/S Washington, 4 Cir., 1957, 241 F.2d 819, 825; The Socony No. 123, 2 Cir., 1935, 78 F.2d 536; The Sif, 2 Cir., 1920, 266 F. 166; Adams v. The Peter Moran, D.C.S.D.N.Y.1950, 94 F.Supp. 520.